Filed Sept. 19, 1894.

---

No. 16,637.

## THE MICHIGAN MUTUAL LIFE INSURANCE COMPANY v. LEON.

LIFE INSURANCE.—*Application.*—*False Entries in by Agent.*—*Estoppel.*— Where an applicant for life insurance, in good faith, gives truthful answers to the questions asked him, but the agent, whether purposely or otherwise, without the knowledge or connivance of the applicant, inserts false answers, the wrong is that of the assurer, and the latter is estopped from imputing it to the assured.

SAME.—*Failure of Assured to Read Answers in Application and Policy.*— *Negligence.*—An applicant for life insurance is justified in assuming that the agent has, in good faith, correctly recorded his answers to the questions asked; and if the answers are given by him truthfully and in good faith, he is not chargeable with negligence if he signs the application thus prepared without reading it, or if he accepts and retains the policy issued thereon, with a copy of the application attached, without searching it to ascertain whether the assurer's agent had acted honestly with his principal.

From the Delaware Circuit Court.

*J. L. McMaster, J. W. Ryan, W. A. Thompson* and *A. Boice*, for appellant.

*R. S. Gregory, A. C. Silverburg* and *J. N. Templer*, for appellee.

COFFEY, J.—This was an action by the appellant, a

foreign insurance company, commenced in the Delaware Circuit Court against the appellee and her husband, Leonidas Leon, to cancel a policy of insurance issued upon the life of the latter, and payable to the former. The complaint alleges, among other things, as a ground for cancellation that the policy was procured by means of false and fraudulent answers to questions contained in the application for the policy, upon which false answers the appellant relied at the time it issued the policy, among which questions and answers were the following: "Has any application for insurance upon your life ever been made to any company upon which a policy has not been granted?" "No."

"Has any unfavorable opinion upon the insurableness of your life ever been given by a physician?" "No."

It is alleged in the complaint that the answers to these questions were false.

During the pendency of the suit Leonidas Leon died, whereupon the appellee, to whom the policy is payable, after notice and proof of such death and the refusal of the appellant to pay, filed a cross-complaint based upon such policy, seeking to recover the amount secured thereby.

Issues were formed upon the complaint and cross-complaint, which were tried by the court without the intervention of a jury, resulting in a special finding of the facts in the case, with conclusions of law thereon, upon which the court rendered judgment in favor of the appellee on her cross-complaint for the full amount of the policy, and against the appellant for costs on the original complaint.

The merits of the controversy turn upon the questions and answers above set out. As the special finding of facts is full, and will enable us to determine the controversy upon its merits, it is unnecessary that we should

further notice the pleadings in the case, except to remark that such finding is, in our opinion, within the issues thereby tendered.

So much of the special finding as relates to these questions and answers is substantially as follows:

On the 21st day of February, 1889, the plaintiff, the Michigan Mutual Life Insurance Company, was then, and is now, a corporation organized under the laws of the State of Michigan, with its principal office in the city of Detroit, in said State, and was then, and is now, doing a general life insurance business; and that on said day, said corporation was engaged in doing a general life insurance business in the State of Indiana, and that one Jacob Frankel was then, and ever since has been, and is now, the general agent of said corporation for the State of Indiana (except in the counties of Jay and Huntington, in said State), with full power to solicit applications for insurance for said company, upon blanks furnished by it, and to deliver all policies issued by said company in said State, except in the counties aforesaid, and to collect premiums thereon; but that said Frankel had no power to issue policies of insurance in said company, or to determine whether policies should, or should not, be issued upon such application; that said Frankel had and has no superior officer or agent over him in said State; that policies of insurance were issued by the executive officers of said company, at its home office in the city of Detroit, upon the approval of such application by the medical director of said company; that on said 21st day of February, 1889, said Frankel, as such agent, was introduced to, and made the acquaintance of, one Leonidas Leon, at his place of business in the city of Muncie, Indiana; that said Frankel thereupon informed said Leon that he was the State agent for the Michigan Mutual Life Insurance Company, and stated that he desired the said

Leon to make application for insurance on his life in said company; that said Leon and others then present thereupon informed the said Frankel that it would be useless for the said Leon to make such application, for the reason then given, that he, the said Leon, had been refused insurance on his life, and rejected by the Connecticut Mutual Life Insurance Company about two years before that time; that after receiving such information, the said Frankel stated to the said Leon that such refusal and rejection made no difference, because two years had elapsed since then; that said Leon then informed and stated to said Frankel that if such rejection by said Connecticut Mutual Life Insurance Company made no difference, he was willing to apply for insurance upon his life in the company represented by said Frankel; that said Frankel, as such agent, then produced to said Leon a blank application for insurance in said Michigan Mutual Life Insurance Company, and read over to said Leon separately each question contained in said blank application; that among other questions propounded by said Frankel to said Leon was the following: "Has any application for insurance upon your life ever been made to any company, upon which a policy has not been granted?" And to said question the said Leon made answer: "Yes, I made application in the Connecticut Mutual Life Insurance Company about two years ago, and was rejected." That said Frankel, with full knowledge of the answer made by said Leonidas Leon, did not write the said answer as made by said Leon, but instead thereof, wrote on said application blank the word "No," as the answer thereto; that said Frankel also propounded to said Leon the following question: "Has any unfavorable opinion upon the insurableness of your life, ever been given by a physician?" To which said question the said Leon then and there made answer, "Yes." That said Frankel,

with full knowledge of said answer to said question, as made by the said Leon, wrote as the answer thereto, the word, "No," on said application blank; that all the answers to all other questions contained in said application blank were truthfully made by the said Leon, and were truthfully and correctly written thereon by said Frankel; that all the answers written on said application blank were written by said Frankel, while acting as the agent of the plaintiff, as aforesaid; that said application was written at the business house, and upon the writing desk occupied therein by said Leon, and in the immediate presence and within from four to five feet of said Leon; that immediately after all of the questions on said application blank had been propounded to said Leon, and the answers thereto written on said application blank by said Frankel, the said Leon signed his own name and the name of his wife, Nettie Leon, thereto; that the said Leon did not read said application, or the answers to any of the questions as written thereon, and did not hear the same read by any other person, and had no actual knowledge that any answer or answers had been incorrectly or untruthfully written to any question or questions in said application; nor did he read or have read to him said application, or any part thereof, before signing his name thereto; that said Leon was then an intelligent and capable business man, of the age of twenty-seven years, and could and might have read said application, and answers contained therein, had he so desired; that subsequent to the signing of said application said Leon was examined by Dr. G. W. H. Kemper, the local medical examiner of said Michigan Mutual Life Insurance Company in the city of Muncie; that said medical examiner made a certificate of his said examination of said Leon upon the reverse side of said application; that said Frankel was not present at the making of

such examination, or of such certificate; that said Frankel at no time, either before or after the making of said application, informed the said Leon that his powers as such agent were limited, or that he had no power to make contracts for said company, and that said Leon had no actual knowledge that said agent had no authority to make contracts of insurance for said company; that said application and said certificate were afterwards forwarded by mail, by said medical examiner, to said Frankel, at the city of Richmond, Indiana, and said application and certificate, without any change or alteration therein, were subsequently, by said Frankel, forwarded by mail to the home office of the plaintiff company in Detroit, Michigan, where they were received on the 2d day of March, A. D. 1889, and referred to Dr. Lyster, the medical director of said company, for his action thereon, he, the said Lyster, then being the officer of said company, upon whose approval or disapproval depended whether or not a policy should be issued. The said medical director examined said application and certificate and approved the same, and directed that a policy of insurance be issued thereon; that the only information which said medical director had when he approved said application was that contained in said application and medical certificate of said Kemper, thereon indorsed, and in approving said application he relied upon the truth of the answers and statements as they therein appeared; that afterwards, on or about the 4th day of March, 1889, said insurance company issued, under date of February 28, 1889, its policy of insurance on the life of said Leonidas Leon, in the sum of five thousand dollars ($5,000), payable unto Nettie Leon, the wife of said Leonidas Leon, in the event of the death of the said Leonidas Leon, and attached to said policy a correct copy of said application and the

answers as written thereon, for said insurance; that said policy was afterwards forwarded by mail by said company to Jacob Frankel at Richmond, Indiana, and was, by said Frankel, sent by mail to said Leonidas Leon, at Muncie, Indiana; that said policy, with said attached copy of said application, was received by said Leonidas Leon on the 6th or 7th day of March, 1889; that said Leon did not read said policy or the application attached thereto, after the same was received by him, and did not have any actual knowledge that any answer or answers to any question or questions contained in said application had been incorrectly or untruthfully written there-in; that said Leon deposited said policy in a private box in the safe in the business house where he did business; that after receiving said policy, to wit, on the 8th day of March, 1889, said Leon executed his note for the sum of $91, payable to the order of the plaintiff, and due in thirty (30) days from date, being for the first annual premium on said policy of insurance, less the commission of said agent, Frankel, as agreed upon between said Leon and said Frankel; and that afterwards, to wit, on the 8th day of April, 1889, said Leon paid said note in full to said Frankel as the agent of said insurance company; that after receiving said policy of insurance the said Leonidas Leon informed his wife, the said Nettie Leon, of the fact that he had procured his life to be insured for her benefit in the sum of five thousand dollars; that said policy of insurance, with the copy of said application thereto attached, was thereafter continuously in the possession and under the control of said Leonidas Leon until the time of his death; that said Leonidas Leon did not at any time read said policy, or the application and answers thereto attached, and did not have any actual knowledge that any answer or answers to any questions contained in said application had been incorrectly

or untruthfully written therein until a demand for the cancellation of said policy was made upon him by the plaintiff; and that he relied upon the statements made to him by said Frankel at the time the application for said insurance was solicited of him by said Frankel.

Before the 21st day of February, A. D. 1889, and before making application to the plaintiff company for insurance on his life, said Leonidas Leon had made application for insurance upon his life, in the Connecticut Mutual Life Insurance Company, of Hartford, Connecticut, and had, at that time, been rejected as an applicant for insurance upon his life, and that an unfavorable opinion had then been given by a physician, as to the insurableness of his life; that the said Leonidas Leon had never been rejected as an applicant for insurance upon his life in any other company.

On the 25th day of August, 1889, said Leonidas Leon, while on a railroad train, received an injury on the left side of his chest and body, and immediately thereafter became dangerously ill, and continued to be so afflicted, and, lingering, died on the 4th day of October, 1890; that on the 15th day of November, 1890, the said Nettie Leon, the beneficiary named in said policy of insurance, caused due proof of the death of said Leonidas Leon to be made upon the blank of said company, which said proof of death was duly received and brought to the notice of the plaintiff company on the 21st day of November, 1890.

No officer or agent of the plaintiff, other than the said Jacob Frankel, had any knowledge that any answer to any question in said application for insurance, by Leonidas Leon, was incorrectly or untruthfully written thereon, when said policy of insurance was issued. In the month of September, 1889, the said Jacob Frankel learned of the dangerous illness of said Leonidas Leon,

and that on the 3d day of October, 1889, the said Frankel communicated to Herman F. Frede, the assistant secretary of the Michigan Mutual Life Insurance Company, the information of the said sickness of Leonidas Leon, and the fact that said Leon had been rejected by the Connecticut Mutual Life Insurance Company, prior to the date of his application for insurance in the plaintiff company. On the —— day of October, 1889, the plaintiff tendered to said Leonidas Leon and said Nettie Leon the full amount of the premium paid by Leonidas Leon on said policy, together with legal interest in gold coin of the United States of America, and thereupon demanded a surrender and cancellation of said policy of insurance, which said tender was rejected and said surrender and cancellation refused by Leonidas and Nettie Leon; that said sum of money was deposited in the clerk's office of the Delaware Circuit Court at and before the commencement of this suit, in continuation of said tender.

Nettie Leon, the defendant and cross-complainant, is the widow of Leonidas Leon and the beneficiary named in said policy of insurance. The said Nettie Leon, at the time said application was made by said Leonidas Leon, and at the time said policy was issued and delivered to him, had no knowledge that any answer or answers in said application for a policy of insurance, had been incorrectly or untruthfully entered thereon; and that she never, at any time, had the actual possession or control of said policy of insurance, and never saw the same or the accompanying application, and answers therein contained, and had no knowledge of the contents thereof (excepting as she had been informed that she ʰ⁺e person named as one of the beneficiaries therein), ⁻ⁱor to the commencement of this action; said Leonidas Leon, on the 28th day of

February, 1890, tendered and offered to said company, in good and lawful money of the United States, the full amount of the premium due on said policy, which offer was rejected by said company, and that Leonidas Leon, in his life was, and the said Nettie Leon was, and ever has been, ready and able to, and have discharged all the duties resting upon them, by reason of said contract of insurance.

Neither the said Leonidas Leon nor the said Nettie Leon ever made any objection to said application, or to any answer to any question as therein written, to the said plaintiff, or any of its agents, and never asked of said company, or of its agents, any correction of or changes to be made in said application, or any answer to any question therein written; or in any way invited or directed the attention of the plaintiff company to any incorrect and false answer.

As to this special finding it may be said of so much of the facts therein set out as relates to the questions propounded to the assured, and the answers written by the agent of the appellee, that it is settled in this State that if the applicant for insurance, in good faith, gives truthful answers to such questions as are asked him, but the agent, whether purposely or otherwise, but without the knowledge or connivance of the assured, inserts false answers, the wrong is that of the company, and not that of the assured. Under such circumstances the company will be estopped from attributing the wrong to the assured. When truthful answers are given to their agent, in good faith, the company has acquired a knowledge of the truth, as it is charged with the knowledge imparted to its agent. As long as the assured acts in good faith, it is immaterial what the agent's motives may have been for suppressing or perverting the truth. The assured is justified in assuming that the agent has, in good faith,

correctly recorded his answers to the questions asked him, and where he has, in good faith, made truthful answers, he is not chargeable with negligence if he signs the application thus prepared without reading it. When the company sends out its accredited agents to solicit insurance, those to whom such agents may apply have a right to rely upon the credit thus given them by their principal, and if the agent acts dishonestly, the dishonesty should be charged to his principal, and not to those with whom he may deal.

The authorities sustaining what we have said are numerous, and have been so often cited in our reports that it would unnecessarily encumber this opinion to cite them again. They are fully cited in the case of *Germania Life Ins. Co. of New York* v. *Lunkenheimer*, 127 Ind. 536.

In our opinion the appellant, under the facts disclosed in this special finding, is estopped from asserting that the answers to the questions therein set out are not true in fact.

It is claimed, however, by the appellant, that inasmuch as a correct copy of the application was attached to and made part of the policy of insurance, the assured, by accepting the policy, was bound to know its contents, and became bound by the representations upon which it was issued.

Whatever may be the rule as to applications prepared by special agents, where the assured has knowledge of the limitations upon his authority, we are of the opinion that the rule contended for by the appellant should not be applied to a case like this, where the application is prepared by a general agent having no superior in the State. As we have seen, if the answers found in the application are untrue, the wrong is with the appellant. As the appellant, through its duly authorized agent, was

in possession of all the facts affecting the risk, we think the assured might well assume that the policy was properly prepared, and was based upon such facts, and that he was under no obligation to make a diligent reading of the policy with a view of ascertaining whether the appellant's own agent had perpetrated a fraud upon it. To permit the appellant now, since a loss has occurred, to avoid its policy on the ground that it was deceived by its own agent, without the fault of the assured, is to permit it to violate one of the best known principles of the law, namely, to take advantage of its own wrong. It is equivalent to permitting it to say, it is true I issued to the assured the policy upon which the suit is based, but I will not pay it because I, through my duly authorized agent, was guilty of the wrong of falsely recording the answers made by the assured to the questions asked him.

The case of *Donnelly* v. *Cedar Rapids Ins. Co.*, 70 Ia. 693, and the case of *Boetcher* v. *Hawkeye Ins. Co.*, 47 Ia. 253, are, we think, much in point here. In the latter case cited, it was said by the court: "We can readily see that the assured may be bound to take notice of the conditions and covenants in the policy that affect his rights, or that apply to matters in existence at the time the policy is delivered, or that may occur in the future, but we know of no principle of law which requires him to diligently examine the policy for the purpose of ascertaining whether it contains false statements of fact as to a past transaction which he might well suppose was closed."

Though the appellant in this case, through its agent, had full notice of the matters of which it now complains, it took no steps to avoid this policy until the assured had been fatally injured in a railroad accident, and until it was too late to secure insurance elsewhere. Under

such circumstances, in order to avoid the policy, we think it should be shown that the assured was guilty of some positive wrong. No wrong is attributed to him, unless it be said that he was guilty of a wrong in neglecting to read the copy of the application attached to the policy issued to him by the appellant. We do not think this was such a wrong as would relieve the appellant from liability on its policy under the circumstances surrounding this case.

The evidence in the cause tends to support the finding of the trial court.

We find no error in the record for which the judgment rendered herein should be reversed, and the same is, therefore, affirmed.

Filed May 29, 1894; petition for a rehearing overruled Sept. 27, 1894.