ELLEN E. MARSTON, Executrix,

*vs.*

KENNEBEC MUTUAL LIFE INSURANCE COMPANY.

Kennebec.    Opinion June 4, 1896.

*Insurance.   Application.   Agent.   Estoppel.   Fraud.   Evidence.   R. S., c. 49, § 90.*

In the case of life insurance policies, where the application is drawn by the authorized agent of the insurer, and the answers to the interrogatories contained therein are written by such agent in filling the application, without fraud or collusion on the part of the applicant, the insurer is estopped from controverting the truth of such statements in an action upon the policy between the parties thereto.

Nor is the introduction of evidence showing the actual statements made by the applicant to the agent at the time of the filling of the application, inadmissible as tending to vary or contradict a written contract by parol, although it may contradict the answers as written by such agent.

The introduction of such evidence is admissible to show the acts and declarations of the agent, for without such evidence there would be nothing upon which to found such estoppel.

A written instrument may be shown to be void by parol evidence.

It may be attacked and overthrown for fraud, illegality, want of consideration or other vice going to the existence of the contract.

So where the fraud and false representations are made with the knowledge and upon the advice or instruction of the party seeking to take advantage thereof, he would be estopped from setting up his own fraud as contrary to good faith; and parol evidence of such fraud would be admissible to establish the estoppel.

This rule is as applicable to insurance contracts as to any other.

The ground upon which such evidence is admitted is not that it does not tend to vary the terms of a written contract by parol, but that the recitals in the application are not the representations of the applicant, but the statements of the insurer himself.

Although by the terms of the written application it is agreed that " statements made to an agent not herein written shall form no part of the contract to be issued hereon," such provision is in contravention of R. S., c. 49, § 90, which provides that " such agents, and the agents of all domestic companies, shall be regarded in the place of the company in all respects regarding any insurance effected by them.   The company is bound by their knowledge of the risk, and of all matters connected therewith.   Omissions and misdescrip-

tions, known to the agents shall be regarded as known by the company, and waived by it as if noted in the policy."

The statute is paramount to any agreement or stipulation which is in conflict with its terms.

*Mailhoit* v. *Ins. Co.*, 87 Maine, 374, affirmed.

ON REPORT.

The case appears in the opinion.

*J. H. Drummond and J. H. Drummond Jr.*, for plaintiff.

*H. M. Heath and C. L. Andrews*, for defendant.

Prior rejection: The clauses of R. S., c. 49, § 90, relied on by defendant, relate to fire and not life insurance, as shown by the context of the entire section. The words "risks," "omission" and "misdescription" are applicable only to fire insurance. It is not possible to include within the word "misdescription" a false statement. It would be an ingenious perversion of language that would permit a negative, which is the full response to its correlative affirmative, to be euphoniously called a "misdescription."

Nor is the preceding sentence: "The Company is bound by their knowledge of the risk and of all matters connected therewith" applicable. The word "risk" means property insured, and the sentence was intended to charge companies with an agent's knowledge of the condition of the property, the title, etc.

*Farrow* v. *Cochran*, 72 Maine, 310, referring to this section as applicable to life insurance, is a dictum only. In *Coombs* v. *Charter Oak Co.*, 65 Maine, 383, the policy provided that the premium should be paid on a given day. It was not paid. Plaintiff offered to prove that the agent, when the insurance was effected, agreed that he could pay at other times. The evidence was excluded. The case follows the Massachusetts cases, citing them with approval, *Odiorne* v. *Ins. Co.*, 101 Mass. 553.

Equitable Estoppel: Never invoked in Maine. In no case cited by plaintiff was the company precluded from showing the falsity of the statement, as a full defense, in spite of the knowledge of its agent, where the application contained a provision that statements made to an agent not written in the application should form no part of the contract. No case has yet gone to that extent.

Some courts, while applying the rule of equitable estoppel to certain facts, hold the rule inapplicable if the application expressly limits the contract to the wording of the policy and of the application and the parties by express agreement limit the agent's authority to receiving and writing down the truth, the application stipulating that the answers written shall all be considered material and true.

To the common law rule excluding such statements, we add the express agreements of the parties that the validity of the contract should stand exclusively upon the truth of the written answers.

A precisely similar contract was upheld in all its strictness in *Johnson* v. *Me. & N. B. Ins. Co.*, 83 Maine, 183, where this court said: "Until a statute shall intervene, a court of law must recognize the contract the parties make and not venture to change it in any way."

*McCoy* v. *Ins. Co.*, 133 Mass, 82, declines to follow *Ins. Co.* v. *Wilkinson*, 13 Wall. 222; and *Ins. Co.* v. *Mahone*, 21 Wall. 222. See *Ryan* v. *World Ins. Co.*, 41 Conn. 168, (19 Am. Rep. 490); *McCollum* v. *Mut. L. Ins. Co.*, 55 Hun, 103; *Kenyon* v. *K. T. & Masonic Assoc.*, 122 N. Y. 247; *Franklin Ins. Co.* v. *Martin*, 40 N. J. L. 568, (29 Am. Rep. 271), reviewing N. Y. and U. S. Sup. Court decisions. For the full limit of the doctrine in Penna. see *Conn. Ins. Co.* v. *Huntzinger*, 98 Pa. St. 41. Counsel also cited: *Teutonic Life Ins. Co.* v. *Beck*, 74 Ill. 165; *Manuel* v. *Ins. Co.*, 67 Cal. 621; *Kausal* v. *Ass. Co.*, 31 Minn. 17, (47 Am. Rep. 776); *Cleaver* v. *Ins. Co.*, 65 Mich. 527, (8 Am. St. Rep. 908); *Piedmont* v. *Ins. Co.*, 5 Ala. 476; *Fitzmaurice* v. *Ins. Co.*, 84 Tex. 61; *Moore* v. *Conn. Mut. L. Ins. Co.*, 41 U. C. Q. B. 497; May on Insurance, § 140; *Porter* v. *U. S. Life Ins. Co.*, 160 Mass. 183; *Kyte* v. *Com. Union Ass. Co.*, 144 Mass. 43; *Packard* v. *Fire Ins. Co.*, 77 Maine, 150; *Richardson* v. *Me. Ins. Co.*, 46 Maine, 394.

If given its broadest meaning, § 90 can mean no more than this: that the doctrine of equitable estoppel is law in this state by statute, upon proof of the necessary facts. This we deny, but it states the case as strongly as plaintiff can possibly contend.

But it is entirely competent for the parties to agree that the

agent shall not have authority to receive statements other than as written. Where so limited, this court must put upon the rule of estoppel the same limitation imposed by the U. S. Supreme Court, the Courts of New York, Pennsylvania, and all others where the question has arisen.

The statute contains no clause declaring provisions in any policy in conflict therewith to be void. It contains no prohibitions express or implied; and creates no penal offense. The stipulation was a legal one before the statute was passsd. Contracts waiving the statute are neither mala in se nor mala prohibita. A statute like this, with no prohibitions, can be applied only in cases where the contract contains no stipulation to the contrary. It is no more than a statutory rule of construction intended solely for the benefit of individuals. It may be waived by either party. It was waived in this case.

SITTING: PETERS, C. J., WALTON, FOSTER, HASKELL, WHITE-
HOUSE, STROUT, JJ.

FOSTER, J. This case comes up on report. It is a suit upon a policy of life insurance to recover $5000, brought by the executrix of the last will of Daniel E. Marston, who entered into a contract of insurance with the defendant company. The contract is evidenced by two written instruments—the application, signed by the deceased, and the policy signed by the officers of the company. The application contained various questions to be answered by the applicant, and certain statements, all of which were therein declared to from the basis of the contract, and at the close were the following certificates signed by the applicant:

1. "I have verified the foregoing answers and statements and find them to be full, complete and true; I do also adopt as my own, whether written by me or not, each foregoing statement, representation and answer, and I agree that they are all material and that statements made to an agent not herein written shall form no part of the contract to be issued hereon."

2. "I do hereby declare and warrant, that the foregoing

answers and statements are full, complete and true; and I agree that this declaration and warranty, together with the preceding agreements shall form the basis of the contract between the undersigned and the Kennebec Mutual Life Insurance Company, and are offered to said company by me as a consideration of the contract applied for, and are hereby made a part of the certificate to be issued on this application; and if there has been any concealment, misrepresentation or false statement, or statement not true, made herein, and if I or my representatives shall omit or neglect to make any payment, as required in respect of amount, place and time of payment, by the condition of such certificates, then the certificates to be issued hereon shall be null and void, and all money paid thereon shall be forfeited to said company," etc.

The policy issued upon this application contained, among other provisions, a stipulation that it was issued upon the condition that the statements and declaration made in the application were in all respects true, and that the application was the basis and a part of the contract of insurance.

Among the several questions propounded in the application, were the following: "6. Has any company, society or order declined to grant you a policy of membership? If so, name them and when."

"7. Have you ever been examined for life insurance or membership by any physician with an unfavorable result?"

To each of these questions the answer was "No."

The defendant claims that these answers were not true, and introduces in evidence the application of the deceased to the Provident Aid Society, made five years previous, wherein the following question and answer appeared: "Has any proposal or application for life insurance, or admission to any order, assessment association, or relief society, ever been made and declined or withdrawn, or upon which a policy or certificate has not been issued? If so, state full particulars." Answer: "Rejected by Ancient Order. Did not give family history."

It also introduces the records of the local lodge of the Ancient Order, wherein is a duplicate record of the report of the recorder,

and upon which appears the following: "Names of rejected applicants: D. E. Marston. Cause; Family history." It also introduces a copy of the original application, upon which is the indorsement of the medical examiner rejecting the applicant.

To meet this position of the defense, the plaintiff introduces the testimony of Mrs. Marston, wife of deceased, and Dr. Edward P. Marston, his son. The substance of their testimony is, that they were present at the time the agent of the defendant wrote out the application, and that the applicant, in answer to questions six and seven, stated to him that he had been rejected by the Ancient Order of United Workmen and gave the circumstances attending the rejection and the cause of it; that after being informed of the circumstances the agent said: "I shouldn't call that a rejection," and advised him to answer the questions "No."

The defendant objects to the introduction of this testimony upon two grounds. (1) That it tends to vary or contradict a written contract by parol. (2) That the clause in the application—"I do also adopt as my own, whether written by me or not, each foregoing statement, representation and answer, and I agree that . . . . statements made to an agent not herein written shall form no part of the contract to be issued hereon"—informed the applicant of the limitations upon the authority of the agent to waive any of the provisions of the contract or to bind it by his knowledge, and that the knowledge of these limitations is binding on the plaintiff, and for this reason also the evidence is not admissible.

To these positions the plaintiff claims that the knowledge and instructions of the agent, based upon the information imparted to him by the applicant, estops the defendant from setting up the alleged falsity of the above answers, and that the evidence of what took place between the applicant and the agent at the time is admissible for the purpose of showing the facts which constitute the estoppel; also, that the provision in the application in relation to the limitation of the authority of the agent to waive any of the provisions of the contract, is in conflict with and controlled by R. S., c. 49, § 90.

The questions arising upon these contentions are the principal matters in issue in this case.

I.   It is undoubtedly the general and well-settled rule that a written contract which is signed by a party, and which contains the terms and conditions of the agreement, is conclusive upon him, and he will not be permitted to show, for the purpose of avoiding such contract, that other stipulations were made at the time of, or before, its execution, which would vary, alter or contradict the terms of the written agreement.   This is a cardinal rule in the construction of contracts admitted to be valid, and where the true intent and meaning is to be ascertained.   It has no application, however, where the existence or validity of the contract itself is in question.   *Prentiss* v. *Russ*, 16 Maine, 30;   *Trambly* v. *Ricard*, 130 Mass. 259.

But in the case of life insurance policies, it is the doctrine of many modern decisions, that where the application is drawn by the authorized agent of the insurer, and the answers to the interrogations contained therein, are written by him in filling the application, without fraud or collusion on the part of the applicant, the insurer is estopped from controverting the truth of such statements in an action upon the instrument between the parties thereto. This doctrine has received the sanction of many of the highest courts in this country, in numerous decided cases, among which may be mentioned those by the Supreme Court of the United States, *Insurance Co.* v. *Wilkinson*, 13 Wall. 222, which was afterwards followed by *Insurance Co.* v. *Mahone*, 21 Wall. 152;   *New Jersey Mutual Life Ins. Co.* v. *Baker*, 94 U. S. 610;   and *Continental Ins. Co.* v. *Chamberlain*, 132 U. S. 304.

It is established by the great weight of authority in a large majority of the courts of the several states.   It is unnecessary to call attention to the decisions in every state where this question has been decided.   The following are some of those which adopt the rule as laid down in the Supreme Court of the United States. *Plumb* v. *Ins. Co.*, 18 N. Y. 392;   *Rowley* v. *Empire Ins. Co.*, 36 N. Y. 550;   *Baker* v. *Home Life Ins. Co.*, 64 N. Y. 648;   *Maher* v.

*Hibernia Ins. Co.*, 67 N. Y. 283; *Grattan* v. *Met. Life Ins. Co.*, 92 N. Y. 274; *Miller* v. *Ins. Co.*, 107 N. Y. 292; *Patten* v. *Ins. Co.*, 40 N. H. 375; *McGurk* v. *Ins. Co.*, 56 Conn. 528; *Ins. Co.* v. *Cusick*, 109 Pa. St. 157.

Massachusetts and New Jersey hold a contrary doctrine, on the ground that the evidence, if introduced, would tend to vary or contradict a written contract. *McCoy* v. *Ins. Co.*, 133 Mass. 82; *Batchelder* v. *Ins. Co.*, 135 Mass. 449; *Ins. Co.* v. *Martin*, 40 N. J. L. 568.

This precise question has not arisen before in this state.

In the case before us, is the insurance company estopped to dispute its liability upon the policy? It cannot be unless the evidence of the acts and declarations of the agent are admissible, for without that evidence there would be nothing upon which to found such estoppel.

The answer to this question depends upon whether this court is to adopt the doctrine laid down by the Supreme Court of the United States, in the decisions to which we have referred, and also what we believe to be the great weight of authority in other courts of the several states, or the doctrine adhered to in Massachusetts and New Jersey. It is true that by the terms of the application and certificate the questions and answers of the applicant are made the basis of the contract. They are nevertheless the proposals upon which the contract is to be issued, and furnish the information upon which the company acts in determining whether it will enter into any contract or not. There can be no doubt that fraud or false representations made as an inducement to a contract may be shown for the purpose of avoiding the contract by the party upon whom such fraud has been practiced. A written instrument may be shown to be void by parol evidence. It may be attacked and overthrown for fraud, illegality, want of consideration or other vice going to the existence of the contract. And where the fraud and false representations are made with the knowledge and upon the advice or instruction of the party seeking to take advantage thereof, he would be estopped from setting up his own fraud as

contrary to good faith, and parol evidence of such fraud would be admissible to establish the estoppel.

This rule is equally applicable to insurance contracts as to any other, and it has been so held in many adjudicated cases. The ground upon which such evidence is admitted is not that it·does not tend to vary the terms of the written contract by parol, but that the recitals in the application are not, when viewed in the light of the evidence offered, the representations of the applicant, but the statements of the insurer himself.. Wherever the courts have held facts to constitute an estoppel which precluded an insurance company from taking advantage of the alleged false answers, it has been assumed or expressly held that evidence was admissible showing what these facts were. As was said by the court in *New Jersey Mut. Life Ins. Co.* v. *Baker*, supra: "The evidence objected to was admissible to show that the statement was not that of the applicant, although signed by her. The statement was one prepared by the company, for which it was responsible, and it cannot be set up to defeat its policy."

And again in *Insurance Co.* v. *Throop*, 22 Mich. 146, Judge Cooley, in speaking of this question, says: "Its purpose was not to vary or contradict the contract of the parties, but to preclude the party who had framed it from relying upon incorrect recitals to defeat it, when he himself had drafted these recitals, and was morally responsible for their truthfulness. . . . . And we think the estoppel is precisely the same when the agent of the insurer drafts the papers as it would be in the case of an individual insurer who was himself personally present and acting."

In New Hampshire the same principle was applied in *Patten* v. *Ins. Co.*, 40 N. H. 375, 380, where the court say: "Nor was it to contradict the fact that the plaintiffs had thus falsely answered the question, nor was it to explain that answer in any way, but merely to show that whatever the answer may have been, however incorrect in its statement of facts, yet, that the agent of the company who drew the application and wrote down this answer of the plaintiffs upon that application, at the same time that he did so, knew perfectly well that the answer was incorrect, and had full

knowledge of the existence of the incumbrances whose existence that answer denied. It is the introduction of a new and independent fact, not for the purpose of contradicting or explaining the answer, but to show that whatever the answer may have been, the defendants had not been, and could not have been, misled or injured by it."

In the case at bar, had the agent who wrote out the answers in the application been the insurer and acting for himself in thus taking and filling the application, certainly the court would refuse to allow him to repudiate the advice and instructions given by him to the applicant in reference to the answers given, and to set up their alleged falsity in defense to an action against him on the policy. He would be estopped from so doing upon the doctrine before stated. He had the facts and circumstances fully made known to him by the applicant himself, and if bound by his own acts and instructions when acting personally, the company which he represents would be equally bound by his acts, instructions, and knowledge when acting as its agent. *Insurance Co.* v. *Mahone*, 21 Wall. 152, 156. Moreover, the statute (R. S., c. 49, § 90) provides that "such agents, and the agents of all domestic companies, shall be regarded in the place of the company in all respects regarding any insurance effected by them. The company is bound by their knowledge of the risk, and of all matters connected therewith. Omissions and misdescriptions, known to the agents, shall be regarded as known by the company, and waived by it as if noted in the policy."

This statute applies to domestic life insurance companies as well as to fire insurance. The legislature so intended. The remark of the judge who drew the opinion in *Johnson* v. *Maine and N. B. Ins. Co.*, 83 Maine, 182, upon page 188, that "there is no such statute affecting life insurance contracts," evidently had reference to another section of the statute (§ 20) in regard to fire insurance, which provides that certain representations or statements in the application must be shown to be in fact material before they shall be held to avoid the contract. It was not intended to go to the extent of saying that this section under consideration had no appli-

cation to life insurance contracts.   We have held that it does, in *Mailhoit* v. *Ins. Co.*, 87 Maine, 374, 382.

Of what avail would this statute be if the agent's knowledge could not be shown ?   And how can it be except by just such evidence as was introduced in this case ?   If this evidence were to be excluded, the agent's knowledge could never be shown.   When it is shown, however, it binds the company, rendering the contract valid, and estopping the company from setting up the alleged false answers to defeat a suit upon it.   *Continental Ins. Co.* v. *Chamberlain*, 132 U. S. 304, 311 ; *Mailhoit* v. *Ins. Co.*, 87 Maine, 374, 382.

In the case last cited, the false answer set up in defense was in reference to whether the applicant had other insurance on his life. He was insured in co-operative societies and so informed the agent, who advised him that such insurance was not within the meaning of the question, and to answer it "No other."   The court held that the attempted interpretation of the question by the agent was binding upon the company, and that the evidence was admissible to show the facts.

The defense cites the case of *Coombs* v. *Charter Oak Ins. Co.*, 65 Maine, 382, claiming that that is an authority directly against the position which the plaintiff is contending for in this case.   In that case, the policy provided that in case the premiums were not paid on or before the days mentioned for the payment thereof, it should be void.   The second premium was not paid when due, and the plaintiff offered to prove that at the time the policy was negotiated the agent assured him that he might pay down what money he had, and "that he would wait for the balance any time within a year."   This evidence was held inadmissible upon the ground that it tended to vary the terms of the written contract. But we think that case is to be distinguished from the case at bar. In that case the provision in relation to the time of payment of the premiums was one of the express terms of the contract, as much as was the amount of the insurance, the party insured, or to whom it was payable.   They constituted the essential elements of a completed contract, and of course could not be varied by parol.

But the questions and answers in the application in this case, while they form the "basis of the contract," are really propositions for a contract, or proposals upon which it is to be issued, if satisfactory to the company. The evidence which was held inadmissible in the one case and that which is received in the other, bears upon entirely distinct propositions. In the former, it was excluded because it tended to vary a written contract by parol; in the latter, it becomes admissible to show that the recitals in the application are not, under the circumstances, the representations of the applicant, although signed by him, but the statements of the company which had full knowledge of all the facts and which is estopped from controverting the truth of these statements.

II. The defendant also contends that the knowledge of its agent of the facts in reference to the declination of the Ancient Order of United Workmen to admit him to membership did not create an estoppel because of the applicant's agreement in his application that "statements made to an agent not herein written shall form no part of the contract to be issued hereon."

It is claimed that by virtue of this stipulation the case comes within the principle of *New York Life Ins. Co.* v. *Fletcher*, 117 U. S. 519, in which it was held that the company was not estopped by the knowledge of an agent whose authority was limited by a provision in the application that no statements made, or information given to the person soliciting the application, should be binding on the company or in any way affect its rights.

Whatever might have been the effect of such an agreement, aside from any statutory provision governing the same, it is enough to say that we deem it in conflict with that provision of statute to which we have alluded. While the statute does not in express terms prohibit the insertion of such provisions, thereby declaring the same null and void, it expressly declares that the agents of insurance companies shall be regarded in the place of the company in all respects regarding any insurance effected by them, and that the company is bound by their knowledge of the risk and all matters connected therewith, and that omissions and misde-

scriptions known to them shall be regarded as known by the company and waived by it as if noted in the policy.

In this respect the present case differs essentially from that of *New York Life Ins. Co.* v. *Fletcher*, supra, for no such statute was referred to there ; and it is more like the case of *Continental Life Ins. Co.* v. *Chamberlain*, supra, where a somewhat similar statute in Iowa was considered, and which was held to govern the rights of the parties.

Nor is the case of *Johnson* v. *Maine and N. B. Ins. Co.*, 83 Maine, 182, in conflict with the principles herein stated. In that case the court held that where, in a contract of insurance, the parties stipulate that certain statements are material, the court could not, in the absence of any controlling statute, decide that they are immaterial. In the present case the parties attempt to agree to that which is controlled by statute, and thereby nullify its plain spirit and meaning.

If the effect of the provision in the application is to limit the authority of the agent to such an extent that his acts and knowledge in respect to the risk is not binding on the company, then certainly it is in direct conflict with the statute which expressly provides that the agent " shall be regarded in the place of the company in all respects ". and that it shall be bound by his " knowledge of the risk and of all matters connected therewith," and that " omissions and misdescriptions known " to him " shall be regarded as known by the company, and waived by it as if noted in the policy."

The statute must be held to be paramount to any agreement or stipulation which is in conflict with its terms. It is imperative and must control. It does not render void the contract of insurance which contains provisions at variance with its requirements. Its effect is to render null and void such provisions and stipulations, leaving the contract in all other respects in full force. Parties must be held to have contracted with a knowledge of it and subject to it. The legislature have deemed it wise to enact the law, and parties will be held to its observance, notwithstanding it may nullify stipulations which they see fit to insert in their

contracts contrary to its mandates.   *Emery* v. *Piscataqua F. & M. Ins. Co.*, 52 Maine, 322;   *DeLancy* v. *Insurance Co.*, 52 N. H. 581, 589, 590;   *Continental Ins. Co.* v. *Chamberlain*, 132 U. S. 304;   *Mailhoit* v. *Metropolitan Life Ins. Co.*, 87 Maine, 374, 382.

III.   The remaining objections relate wholly to questions of fact, and will be considered briefly.

Among the questions in the application asked of the applicant, concerning his family history, and answers thereto, are the following:

" Father, age at death."   Answer: " 52."

" Cause of death.   Duration of illness."   Answer:   " Not actually known.   No physician.   Had complaint of stomach for two years or more."

" Mother, age at death."   Answer: " 52."

" Cause of death.   Duration of illness."   Answer: " Chronic bronchitis; sick four or five years."

" Own brother, age at death? "   Answer: " 62 or 63."

" Cause of death.   Duration of illness? "   Answer:   " Died in Illinois.   Short sickness, with great pain in stomach."

The defendant insists that the answers given in relation to the cause of death of the father and brother are false, and were known to the applicant to be so at the time they were given.

(1).   The evidence bearing upon the answer, given in reference to the father's death, consists of the copy of applicant's previous applications to two other societies, and the testimony of a brother of the applicant.   In these applications it appears that the answers given as the cause of the father's death was " heart disease," and as to its duration—" don't know; died suddenly, at last."

In the application to the defendant, claimed to be inconsistent with the former statements, the answer was:   " Not actually known.   No physician.   Had complaint of stomach for two years or more."   The testimony of the brother was that his father died forty-four years ago, suddenly in the night, that there was no physician called before or after his death, and that he never knew whether his father died of apoplexy, paralysis or heart disease.   The

applicant was but fourteen years old at the time of his father's death. The statements in the former application were made five and seven years respectively prior to his application to the defendant, and are only inconsistent with his answer therein so far as it may be inferred from them that the applicant actually knew the cause of his father's death. At most they are only conflicting statements. The presumption is that he answered truthfully, and fraud cannot be reasonably inferred from such evidence.

(2.) Again, as to the cause of his brother's death, his answer was, that he " died in Illinois. Short sickness with great pain in his stomach."

As contradictory to this statement, the defense introduced the application to the Ancient Order of United Workmen, in which his answer as to the cause of his brother's death is given as " anginia pectoris;" and as to the duration of his illness as " short, only a few hours."

The fact is, that in the application to defendant the question calling for an answer as to the cause of death is not answered at all. If the defendant had desired a fuller statement it could have called for it. It did not, but accepted the application with questions partially answered, and issued the policy upon it, thereby waiving the imperfection in the answer, and rendering the omission to answer more fully, immaterial. *Phœnix Life Ins. Co. v. Raddin*, 120 U. S. 183; *Conn. Ins. Co. v. Luchs*, 108 U. S. 498; *Hall* v. *People's Ins. Co.*, 6 Gray, 185.

The alleged falsity of these answers was an affirmative proposition set up by the defendant to defeat a recovery upon the policy. The burden was on the defense to sustain this proposition, and this it has failed to do.

*Judgment for plaintiff.*