EDWARD B. RUST *v.* METROPOLITAN LIFE INSURANCE COM-PANY, a corporation of the State of New York.

---

[1] See *Central Trust & Savings Co. v. Chester County Electric Co.,* 9 *Del. Ch.* 247, 80 *A.* 801.

200 

(*May* 18, 1934.)

RICHARDS and REINHARDT, J. J., sitting.

*James M. Tunnell* for plaintiff.

*Frank M. Jones* for defendant.

Superior Court for Sussex County, No. 38, June Term, 1932.

RICHARDS, J., delivering the opinion of the Court:

It is the contention of the defendant company,

(1), that if the plaintiff could read and had every opportunity to read the questions and answers before he signed the application, and failed or neglected to read them, or to make any objection, if any he had, before signing the application, he cannot deny the truthfulness and correctness of the answer to said thirty questions;

(2) that the plaintiff having signed the application, he is estopped from denying the correctness of the answers to any of the questions contained in said application, in the absence of any fraud on the part of the defendant company in securing said answers, and that no fraud was alleged on the part of the agent in securing said answers.

In support of its position, the defendant cites the Delaware case of *Standard Sewing-Machine Company v. Roxey Frame,* 2 *Penn.* 430, 48 *A.* 188; *Upton, assignee, v. Tribilcock,* 91 *U. S.* 45, 55, 23 *L. Ed.* 203, and a number of other cases, all of which clearly support its contention that one is bound to read what he signs, if he is able to do so; but, they do not seem to be applicable to a case like the one now before us where the representative of a Life Insurance Company incorrectly states the facts given him by the insured in filling out his application for life insurance and thereafter secures his signature to such application.

In the case of *Upton, assignee, v. Tribilcock,* above referred to, the plaintiff sued as assignee of the Great Western Insurance Company to recover the balance of $10,000.00 stock subscription made by the defendant, only twenty per cent. of which had been paid. The complainant averred that the defendant simply agreed to become a stockholder, that he accepted the certificate therefor and

became bound to pay for the same under the provisions of the charter of the company. The defense was that the subscription was obtained by fraudulent representation of the agent of the company to the effect that the defendant would only be responsible for twenty per cent. of the subscription made by him. The defendant had received a copy of the charter and by-laws of the Company several days before he subscribed for the stock, which provided that every person who subscribed for ten dollars' worth of stock and paid twenty per cent. thereof, should be constituted a director of the company and remain a director so long as he retained that amount of stock. The subscription to the stock in question was made under these provisions. In discussing the liability of a subscription to the capital stock of a corporation, Mr. Justice Hunt used the language quoted in the demurrant's brief, with reference to the obligation which the law imposes upon one to read what he signs. There is no doubt about the principle of law that a subscriber to the capital stock of a corporation is liable for the full amount of his subscription or, as stated above, that ordinarily one is bound to read what he signs, if he is able to do so. As to the alleged fraudulent representations made by the agent, the Court held that it was error for the District Judge to charge the jury that if the defendant, discovering that he had been deceived, within a few months after receiving his certificate, attempted to surrender it, or refused to receive any dividend upon the stock, or took other steps of a similar nature, which would amount to a repudiation of the transaction. Mr. Justice Miller in a dissenting opinion concurred in by Chief Justice Waite and Mr. Justice Bradley said:

"I am of opinion, that, where an agent of an existing corporation procures a subscription of additional stock in it by fraudulent representations, the fraud can be relied on as a defence to a suit for the unpaid instalments, when suit is brought by the corporation."

There are a number of cases which hold that where

the applicant's signature to the application was obtained by trick, or some act of a fraudulent nature, committed for the purpose of inducing him to sign, he was not bound by the incorrect answers placed in the application by the agent, but no such contention is made in this case. It is alleged in the second count of the plaintiff's declaration, however, that the plaintiff's answers to questions numbers 25, 27 and 29 of this application were incorrectly and fraudently written in by the agent of the defendant.

The law of this state in reference to insurance agents found in *Volume* 37 of the *Laws of Delaware, c.* 52, *p.* 229, has the following provision:

"Every insurance agent doing business in this State shall be required to have a valid and unrevoked Certificate of Authority to act as agent for each company represented by such agent. Such Certificate of Authority shall be issued by the Insurance Commissioner on the written application of the company to be represented by such agent and upon payment of the fee fixed by law. Such Certificate of Authority may be revoked by the Insurance Commissioner on the written request of the company employing the holder thereof."

This statute requiring that every insurance agent in order to do business in this state must have a Certificate of Authority to act as agent for each company he represents, issued by the Insurance Commissioner, and that said Certificate of Authority shall be issued upon the application of the Insurance Company to be represented by such agent, and that said Certificate may be revoked by the Insurance Commissioner, upon the written request of the company, seems to leave no doubt that one who is authorized to act as insurance agent, in the state, is the agent of the company. In view of the great number of both Life and Fire Insurance Companies, which are now doing business in this country, it is not surprising that a great number of cases have been decided throughout the country involving questions similar to those involved in the case now under consideration. In many of these cases, the application was made a part of the insurance policy, as in

this case. In considering the questions which have arisen, a majority of the Courts have held that the applicant, notwithstanding the fact that he had signed the application, was not bound by the incorrect answers to questions contained in the application which are written in by the agent of the Company without his consent. And further, that the company could not take advantage of the incorrect answers to the questions in the application, written in by its agent, without the consent of the applicant, in order to defeat a recovery on the policy. *Union Mut. Life Ins. Co. v. Wilkinson,* 13 *Wall.* 222, 20 *L. Ed.* 617; *American Life Ins. Co. v. Mahone,* 21 *Wall.* 152, 22 *L. Ed.* 593; *Triple Link Mut. Indemn. Ass'n v. Williams,* 121 *Ala.* 138, 26 *So.* 19, 77 *Am. St. Rep.* 34; *Van Houten v. Metropolitan Life Ins. Co.,* 110 *Mich.* 682, 68 *N. W.* 982; *Otte v. Hartford Life Ins. Co.,* 88 *Minn.* 423, 93 *N. W.* 608, 97 *Am. St. Rep.* 532; *Lewis v. Mutual Reserve Fund Life Assoc. (Miss.),* 27 *So.* 649; *Lyon v. United Moderns,* 148 *Cal.* 470, 83 *P.* 804, 4 *L. R. A. (N. S.)* 247, 113 *Am. St. Rep.* 291, 7 *Ann. Cas.* 672; *Bowlus v. Phenix Ins. Co.,* 133 *Ind.* 106, 32 *N. E.* 319, 20 *L. R. A.* 400; *Mutual Fire Ins. Co. v. Owen,* 148 *Md.* 257, 129 *A.* 214; *Keystone Mutual Benefit Assoc. v. Jones,* 72 *Md.* 363, 20 *A.* 195; *Domocaris v. Metropolitan Life Ins. Co.,* 81 *N. H.* 177, 123 *A.* 220; *Sternaman v. Metropolitan Life Ins. Co.,* 170 *N. Y.* 13, 62 *N. E.* 763, 57 *L. R. A.* 318, 88 *Am. St. Rep.* 625; *Suravitz v. Prudential Ins. Co.,* 244 *Pa.* 582, 91 *A.* 495, *L. R. A.* 1915A, 273; *Germania Fire Ins. Co. v. Hick,* 125 *Ill.* 361, 17 *N. E.* 792, 8 *Am. St. Rep.* 384; *Standard Auto Ins. Assoc. v. Russell,* 199 *Ky.* 470, 251 *S. W.* 628; *Farmers' Ins. Co. v. Williams,* 39 *Ohio St.* 584, 48 *Am. Rep.* 474; *Marston v. Kennebec Mutual Life Ins. Co.,* 89 *Me.* 266, 36 *A.* 389, 56 *Am. St. Rep.* 412; *Mutual Aid Union v. Blacknall,* 129 *Ark.* 450, 196 *S. W.* 792; *Michigan Mut. Life Ins. Co. v. Leon,* 138 *Ind.* 636, 37 *N. E.* 584; *Wright's Adm'r v. Northwestern Mutual Life Ins. Co.,* 91 *Ky.* 208, 15 *S. W.* 242.

█ These authorities recognize the sanctity of a contract but they are based upon the theory that where the application is filled up by the agent of the company, and where the answers written in in response to the questions contained in said application are not the answers actually made by the applicant, even though the application is signed by the applicant, it is not his contract and that it is not varying the terms of a written contract to allow him to deny such incorrect answers. In view of the great number of agents who are soliciting business for the various insurance companies, and the limited education of many of those with whom they transact business, also the inclination of the average person to rely upon the representations of the agent, we feel that the rule adopted by the cases above referred to is correct. This simply means that where the plaintiff contends that the answers written in by the agent to the questions contained in the application are not the answers given by him, he will have an opportunity, when suit is brought upon the policy, to testify what the answers actually given by him were. It will then be for the jury to determine whether the answers contained in the application were the answers actually given by the applicant.

*Elliott on Contracts, 5th Volume,* § 4187, in treating oral testimony to show actual statements, has this to say:

"The authorities go far, very likely not too far, in holding the assured responsible for his warranty, and in excluding oral evidence to contradict or vary it; but they do not establish that where an agent of the assurer has cheated the assured into signing the warranty and paying the premium, and the policy was issued upon the false statements of the agent himself, the assured shall not prove the fact and hold the principal to the contract, as if he had committed the wrong."

In the case of *Wright's Adm'r v. Northwestern Mutual Life Ins. Co.,* 91 *Ky.* 208, 15 *S. W.* 242, 243, Court of Appeals of Kentucky said:

"We think not to make an insurance company responsible for acts and declarations of its soliciting agents in the matter of preparing applications would not only give it undue advantage of ill-

informed and unsuspecting persons, but be an invitation to both the company and its agents to take it."

In the case of *Marston v. Kennebec Mutual Life Ins. Co.*, 89 *Me.* 266, 36 *A.* 389, 390, 56 *Am. St. Rep.* 412, the Supreme Court of Maine used this language:

"But in the case of life insurance policies, it is the doctrine of many modern decisions that, where the application is drawn by the authorized agent of the insurer, and the answers to the interrogations contained therein are written by him in filling the application, without fraud or collusion on the part of the applicant, the insurer is estopped from controverting the truth of such statements in an action upon the instrument between the parties thereto. This doctrine has received the sanction of many of the highest courts in this country, in numerous decided cases, among which may be mentioned those by the Supreme Court of the United States."

In *Michigan Mut. Life Ins. Co. v. Leon,* 138 *Ind.* 636, 37 *N. E.* 584, 588, the Supreme Court of Indiana made this comment:

"To permit the appellant now, since a loss has occurred, to avoid its policy on the ground that it was deceived by its own agent, without the fault of the assured, is to permit it to violate one of the best known principles of the law, namely, to take advantage of its own wrong."

In the case of *Union Mut. Life Insurance Co. v. Wilkinson,* 13 *Wall.* 222, 236, 20 *L. Ed.* 617, the Supreme Court of the United States through Mr. Justice Miller used the following language:

"The modern decisions fully sustain this proposition, and they seem to us founded in reason and justice, and meet our entire approval. This principle does not admit oral testimony to vary or contradict that which is in writing, but it goes upon the idea that the writing offered in evidence was not the instrument of the party whose name is signed to it; that it was procured under such circumstances by the other side as estops that side from using it or relying on its contents; not that it may be contradicted by oral testimony, but that it may be shown by such testimony that it cannot be lawfully used against the party whose name is signed to it."

Many similar quotations may be found in the other cases cited in support of our position. We are aware of the fact that the Supreme Court of the United States has taken

a different view of this question in the case of *Northern Assurance Company v. Grand View Bldg. Assoc.*, 183 *U. S.* 308, 22 *S. Ct.* 133, 46 *L. Ed.* 213, also that the states of Massachusetts, New Jersey, and Rhode Island have taken a contrary view. It is interesting to note that in the case of *Reed v. Equitable Fire & Marine Ins. Co.*, 17 *R. I.* 785, 24 *A.* 833, 834, 18 *L. R. A.* 496, the Supreme Court of Rhode Island made the following comment:

"But, however this may be, we recognize the tendency of decision in favor of the insured, and, if this were a new question in this state, we might feel compelled to yield to the weight of authority."

It is contended by Mr. Justice Shiras in the case of *Northern Assurance Company v. Grand View Bldg. Assoc.*, 183 *U. S.* 308, 22 *S. Ct.* 133, 46 *L. Ed.* 213, that Mr. Justice Miller did not intend in the *Wilkinson Case* to lay down a new rule of evidence in insurance cases, but notwithstanding the *Wilkinson Case* has been followed by a great majority of the Courts throughout this country.

We think that the rule announced by the above cited decisions is a just one and should be followed in this case.

In consequence thereof, the demurrer is overruled.