MARY A. COPELAND AND WILLIAM COPELAND v. THE DWELLING–HOUSE INSURANCE COMPANY OF BOSTON, MASS.

*Insurance policy — Forfeiture clause — Estoppel — Application for insurance — Evidence.*

Where an insurance agent who had authority to make and deliver policies of insurance without referring the applications to the company, prior to such delivery, agreed with an applicant that she might incumber the property in a given amount, and that he would indorse such agreement upon the application, and there is nothing in the policy limiting the power of the agent to make such an agreement, the company is estopped from claiming any forfeiture by reason of such additional incumbrance.

Error to Lapeer. (Moore, J.) Argued October 18, 1889. Decided November 8, 1889.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Millis & White,* for appellant, contended as stated in the opinion, citing authorities found in foot-note.

*Geer & Williams,* for plaintiffs, contended for the doctrine stated in the opinion.

Long, J. This action is brought to recover upon a policy of insurance, issued by defendant company to plaintiffs, on April 15, 1886, for $1,000; $300 of the insurance being upon the barn and sheds, $100 upon the hog-pen, granary, and hen-house, $400 on hay, grain, farming implements, wagons, carriages, etc., and the balance of $200 on live-stock. A premium of $9.50 was paid for the policy to William Murch, defendant's agent at North Branch, Lapeer county.

On the morning of November 17, 1886, the barns, sheds, and a large quantity of hay, farming implements, etc., were consumed by fire. Proofs of loss were thereafter made in due form, and payment of the loss demanded. The defendant company refused payment, and at the time of joining issue in the suit brought on the policy gave notice with its plea:

"1. That the policy mentioned in said declaration was issued by said defendant on the faith of an application therefor, partly in writing, and partly in print, signed 'Mary Copeland, per Wm. Copeland,' in which application it was represented and warranted that the property insured, and for the burning of a portion of which property recovery is sought in this cause, was unincumbered, while in truth and fact the barn mentioned in said declaration and in said policy was incumbered by a certain mortgage, which said mortgage is as follows, to wit: One certain mortgage given by Mary A. Copeland to one John M. Wattles, bearing date September 15, 1885, for the sum of $300, which mortgage remained unpaid at the time of the fire mentioned in said declaration.

"2. That said plaintiff Mary A. Copeland, after the issuing of said policy, and before the fire mentioned in said declaration, did, without the consent of said defendant, further incumber said barn by a mortgage, which last aforesaid mortgage is described as follows, to wit: One certain mortgage given by Mary A. Copeland to one John M. Wattles, bearing date September 15, 1886, for the sum of $100, which last aforesaid mortgage remained unpaid at the time of the fire mentioned in said declaration.

"3. That the burning of the property for the recovery of which this action is brought was procured by the said plaintiff William Copeland."

The only question presented by counsel for the defendant. company arises under the second paragraph of the notice attached to the plea. There is no controversy but that Mary A. Copeland, one of the plaintiffs, and the one in whom the title to the real estate was vested upon which the barn and other property destroyed were situated, on September 15, 1886, and after the issue of the policy by defendant's agent, placed a mortgage upon the realty for the sum of $100, running to John M. Wattles, mortgagee, and that said mortgage remained unpaid at the time of the fire. It is this act of which the defendant complains, and which it is claimed violates the policy.

On the trial of the cause plaintiffs claimed that at the time of the making of the application (which was in writing) for the policy, and prior to the time the policy issued, they informed Mr. Murch, the defendant's agent, that they expected to put the mortgage of $100 upon the property in a short time and that he assented thereto. This Mr. Murch denies. The question was submitted to the jury by the court in his general charge. The court directed, if they found that Murch made such an agreement with plaintiff, the company would be bound by it; and the fact that plaintiffs, subsequent to the time of the issuing of the policy, placed the mortgage upon the property without further notice to the company would not invalidate the policy.

It appears that Mr. Murch, the agent of the company, had authority to make and deliver policies of insurance without referring the application to the company prior to the making and delivery of the policy. Before the policy was made he inspected the property, and concedes

that the farm upon which it was situated was worth $2,000. The plaintiffs, it appears, were insured in the Lapeer County Mutual Insurance Company, and the policy therein was in force at the time the application was made in the defendant company. Murch, however, solicited the plaintiffs to change their insurance, and first took the application of the husband, who signed Mary A. Copeland's name thereto, "per William Copeland." The title to the farm was in Mrs. Copeland's name, but the title to the personal property, or some portion of it, was in Mr. Copeland. Murch was fully informed of these matters, and advised the issuing of the policy to them both. A few days after the first application was made by William Copeland, Murch, the agent, called at the house, and there filled out a new application. Mrs. Copeland says:

"I took the application, and looked it over, until it came to the passage where it asked if there was any liens or incumbrances against the property, and the answer was 'No.' I pushed the paper aside. My husband came to me; he says, 'What is wrong with the paper?' I pointed to that passage. He turned to Mr. Murch and says: 'Mr. Murch, explain it to my wife as you did to me,' and he read the passage to him. 'Oh,' he says, 'that means that there isn't incumbrance enough to make the risk hazardous.' He says, 'It don't matter if there is an incumbrance, as long as there is not enough to make the risk hazardous.' I says, 'I object to signing under those circumstances;' and he said he would fix that all right, and I supposed he did. I told him then that John M. Wattles held a mortgage of $300, and my husband spoke up and said that we might want to get some further money,—one or two hundred dollars,—and he said it would be all right, or that he would fix it all right. * * *. Before this policy was delivered to me I fully advised him in relation to the mortgage that was to be put upon it, and what I intended to do with it, and we relied upon and accepted that policy, supposing that he would make that indorsement upon the application that we signed. I accepted it upon those terms."

This testimony is fully denied by Mr. Murch, and he claims that there was no such arrangement or understanding; that nothing was said of any incumbrance being on the property, or that any was to be put on. Mrs. Copeland, however, is fully supported by her husband and by Mr. Daniel Draper, who was present when Murch, the agent, was looking the property over, and who says that William Copeland then advised him of the incumbrance, and their desire to put on another mortgage, when Murch said it would be all right.

It is a somewhat curious fact that on the trial the last application was not produced, nor in any manner accounted for. The application signed by William Copeland for his wife was the one produced, and which Murch himself testifies Mary A. Copeland never signed. It was the second application which Mary A. Copeland read over, and which she and her husband say Murch agreed to "fix all right," and upon which Mrs. Copeland says Murch agreed to make the indorsement. Whether it was fixed all right, or whether Murch made such an indorsement upon it, noting the incumbrance then existing, and an agreement for the placing of an additional mortgage of from $100 to $200 upon it, is not shown by the application introduced. Apparently this last application was the one upon which the policy issued, and was the only one defendant was entitled to have in evidence, even under its own testimony. The court, however, admitted in evidence the first application; but, inasmuch as the plaintiffs are not here complaining, we need not discuss this point in the case any further than it may be treated as a circumstance tending strongly to show the correctness of the plaintiffs' claim that such an arrangement was made, and that Murch had full notice of the incumbrance then existing, and agreed to fix the application so that the plaintiffs might place an addi-

tional incumbrance thereon of from $100 to $200, and that he did not regard this as increasing the hazard.

Under the finding of the jury we must consider the case upon the theory that such an arrangement was made, and that Murch agreed not only to fix the application so that it would show the incumbrance then existing, but to write an agreement on the application that would authorize the plaintiffs to put on from $100 to $200 additional. From the fact that this application was withheld on the trial, and the first one produced, a strong inference arises that, had it been produced and exhibited, it would have shown the indorsements claimed by plaintiffs.

Counsel for defendant contend that the court was in error in submitting the case to the jury upon plaintiffs' theory; that the case must be governed by the rule laid down in many cases, that parol agreements or representations, made at the time, or prior to the time, a contract is reduced to writing, cannot be received to add to, vary, or contradict the terms of a written instrument.[1] This is the well-settled rule, but counsel are in error in attempting to apply it to the present case. Even if the rule could be so applied, we must treat the contract as consisting of the application actually made, and which was not produced on the trial, and the policy itself. By the terms of the policy this application was made a part of the contract. The policy provides as follows:

"By the acceptance of this policy the assured covenants that the application herefor shall be and form a part hereof."

The policy provides further, however, that the application shall be treated as a warranty by the assured, and

---

[1] Counsel cited in support of this contention, *Moore v. Ins. Co.*, 72 Iowa, 414; *Ins. Co. v. Webster*, 69 Ill. 393; *Ins. Co. v. Davenport*, 37 Mich. 609; *Ins. Co. v. Burns*, 5 Ins. L. J. 69 (Ky.).

the company shall not be bound by any act or statement made to or by an agent unless inserted in the contract. There is nothing in the policy limiting the power of the agent to make just such an agreement as claimed by the plaintiffs.    It only provides:

"If there is or shall be other prior, concurrent, or subsequent insurance, whether valid or not, on said property, or any part thereof, without the company's consent herein; or if said buildings, or either of them, now are or shall become vacant or unoccupied; or if the hazard shall be increased in any way; or if the property, or any part thereof, shall be sold, conveyed, incumbered by mortgage or otherwise, or any change take place in the title, use, occupation, or possession thereof whatever; or if foreclosure proceedings shall be commenced; or if the interest of the assured in said property, or any part thereof, now is or shall become any other or less than a perfect, legal, and equitable title and ownership, free from all liens whatever, except as stated in writing hereon; or if the buildings, or either of them, stand on leased ground, or land of which the assured has not a perfect title; or if this policy shall be assigned without written consent herein,—then and in every such case this policy shall be absolutely void."

If there was an incumbrance on the property, and the agent had notice of it, and agreed to note the fact on the application, and plaintiffs rested under the belief that it was so noted, there can be no doubt that the company would be estopped from setting up the fact to defeat a recovery upon the policy, even though not actually indorsed thereon, as such notice would be notice to the company.

In *Temmink v. Insurance Co.*, 72 Mich. 388 (40 N. W. Rep. 469), it was held by this Court that where a life insurance agent assumes the responsibility of filling out a blank application, and the applicant, presuming that he had acted honestly, signs it without any knowledge of its contents, a recovery may be had upon the policy, though

certain representations may be materially false.   See, also, *Dunbar v. Insurance Co.*, 72 Wis. 492 (40 N. W. Rep. 386); *Insurance Co. v. Pearce*, 39 Kans. 396 (18 Pac. Rep. 291).

Counsel for defendant claim that however this may be in reference to incumbrance already existing on the property, yet if any such arrangement was made, as plaintiffs claimed it was,—one contemplated in the future,—the stipulation or understanding, if it amounted to anything, was an executory contract, intended to form a part of the contract of insurance, and that, this being so, the doctrine cannot be admitted that any part can rest in parol.

The agreement, as claimed by plaintiffs, amounted to more than this.   They claimed the right to incumber the property further, and the defendant agreed, through its agent, that they might do so to the amount claimed, and that this should form a part of the writing, and should be indorsed on the application.   If it had been so indorsed, no one would claim that the policy would be rendered void when the mortgage was so placed upon it, as the policy and application together formed the contract.   The plaintiffs relied upon defendant's agent to write this agreement in the contract, and he agreed to so write it. The agent failing to do this, it is as much a fraud upon the plaintiffs as though he had written a clause in the application without the knowledge of the plaintiffs, making the policy void if such additional incumbrance was placed upon the property.   The plaintiffs had a right to rely upon the agreement of the agent to so write the application, and when they took the policy they had a right to assume that the company waived any conditions in the policy inconsistent with their right to further incumber.   Parol evidence was certainly competent to

show such an agreement, and it is not a violation of the rule that verbal testimony is not admissible to vary a written contract.

This whole controversy arises out of the forfeiture clause in the policy. The act complained of, which defendant claims forfeited plaintiffs' right of recovery, was one which the company or its agent could have given plaintiffs the right to perform, and, if assented to by the company, would not have worked a forfeiture. The company is now estopped from claiming any forfeiture by reason of this incumbrance. Through their agent they assented to it, and no further notice was required. This principle is sustained in *Brandup v. Insurance Co.*, 27 Minn. 393 (7 N. W. Rep. 165); *Kausal v. Association*, 31 Id. 17 (16 N. W. Rep. 430).

There was no error in the charge as given. If any error was committed by the trial court, it was in permitting the defendant to introduce in evidence an application which it was not pretended one of the plaintiffs ever signed or approved, and upon which it is not claimed the policy issued, and consequently formed no part of the contract. Of this, however, the defendant is not complaining.

The judgment of the court below must be affirmed, with costs.

The other Justices concurred.