## SUMMERS v. ALEXANDER.

No. 1141.   Opinion Filed November 14, 1911.

(120 Pac. 601.)

1.   INSURANCE—Premiums— Actions — Representations — Defenses. One to whom a distinct and definite representation has been made is entitled to rely on such representation, and need not make further inquiry concerning the particular facts involved; and, where the transaction involved the taking out of a particular kind of life insurance policy, the holder had a right to rely upon the belief that the agent would carry out his agreement in conformity to the original contract; and the failure of the agent to do so, whether the result of a mistake or a deliberate fraud, cannot operate to the prejudice of such holder in an action brought by the agent to enforce the collection of the premium notes.

2.   SAME—Premiums—Action—Fraud.  An agent of an insurance company who procures an illiterate person to take out a policy of insurance on his life, at the time representing that he would procure a policy of a particular kind, and who afterwards obtains the issuance of a policy varying materially from the one promised and agreed upon, and which substituted policy is received and retained by the holder for a period of five months before discovery of the fraud, but which is then promptly returned to the agent, cannot recover on the note given him for the premium on the 'policy contracted for, where the holder of the policy relied upon the representations and promises made at the time the contract for the policy was made.

3.   SAME—Premiums—Action—Direction of Verdict.  Such facts having been proved, it was error for the trial court to direct a verdict for the plaintiff.

4.   SAME — Contracts — Validity — Fraud.  Defendant, an illiterate man, reposed confidence in an insurance agent who had solicited him to take out policies of insurance on his life, with the result, that it was agreed that a policy of a particular kind should be sent him.  Defendant relied implicitly on the representations and promises, and when the policy arrived it was put away without examination, and there remained for a period of about five months, when defendant discovered, for the first time, that the policy was not the kind for which he had contracted.  Upon suit being brought by the agent to enforce the collection of notes given for the premium, held that, under the circumstances, defendant was not guilty of laches in not sooner discovering the fraud, and, the facts not being disputed, the agent is not entitled to recover in the action.

(Syllabus by Sharp, C.)

*Error from Le Flore County Court; James L. Hale, Judge.*

Action by M. L. Alexander against J. M. Summers. Judgment for plaintiff, and defendant brings error. Reversed.

Action on two promissory notes aggregating $182.95, given by plaintiff in error, defendant below, for the first premium on a life insurance policy in the sum of $5,000 taken out by him. This action was originally brought by defendant in error, plaintiff below, in the justice court of Spiro township; judgment for defendant. An appeal was taken to the county court, where the cause was tried to a jury. At the close of the testimony, defendant in error requested an instructed verdict, which request was granted. Directed verdict for defendant in error for the face value of the notes. Motion for new trial filed and overruled, and the cause is regularly appealed to this court. Reversed and rendered.

*T. T. Varner,* for plaintiff in error.

*Day & Du Bois* and *Ledbetter, Stuart & Bell,* for defendant in error.

Opinion by SHARP, C. (after stating the facts as above). The pleadings were framed and the cause was tried in the county court upon the theory that the defendant, by retaining in his possession, without objection, the policy on his life, was thereby estopped from denying his liability on the notes. The answer of defendant charged that the notes in question were fraudulently obtained from him through the misrepresentations of the plaintiff, and that as soon as the fraud was discovered he returned the policy of insurance.

In *Mutual Insurance Company v. Hargus,* 99 S. W. (Tex.) 580, it is said:

"The court did not err in refusing to charge the jury, at appellant's request, that, if plaintiff had an opportunity to read the application before he signed it, he is bound by its terms, even though it should believe he did not read it. If the plaintiff relied upon the representations of appellant's agent that it was an application for the kind of an insurance policy agreed

upon, and was induced thereby to sign it, in ignorance of the fact that it was for a policy of a different kind, he would not be estopped by reason of signing the application from showing that the policy issued was not the kind contracted for. One cannot preclude a man from proving the truth when he has fraudulently induced him to one thing by causing him to believe he was doing that which was agreed between them he should do." ·

At no time during the progress of the present case has defendant in error denied the charge of fraud made against him; in fact, it stands bluntly admitted, but he says that the defendant was negligent in not discovering that plaintiff had perpetrated a fraud upon him; in other words, the doctrine of estoppel is inverted, and, instead of being applied to the one practicing the deception, it is attempted to be applied to the victim of the fraud. This court will not put the stamp of its approval on such conduct, and will not lend its aid to the recovery on a note, where the plaintiff confesses fraud. As is said in the brief of defendant in error: "He applied for a straight life policy; the company for some reason did not see fit to issue him a life policy, but did send him a 20-year annuity policy."

Plaintiff, while on the witness stand, identified the notes, and testified that he was the owner thereof; that they were due and unpaid. This was all the testimony introduced on the part of plaintiff.

Defendant testified that in the month of August or September plaintiff came to his home and solicited him and his wife to take out policies of insurance on their lives; that defendant's wife first took out a 20-year endowment policy for $1,000, upon the representations of plaintiff that the policy would be payable in cash in the event of her death, and that defendant then told plaintiff that he had what he termed an "annual-pay" policy in another company, and stated to plaintiff that he would not have a policy of that kind, and that if he took out one it must be such that, if he should die, his family would collect the amount of the policy in cash, and not in yearly installments; that plaintiff assured him that he knew just what kind of policy was

wanted, and it was then agreed that a policy should be written, carrying out the terms of their agreement; that throughout the conversation plaintiff represented that the policies for which application was made and the notes executed were payable in cash .in the event of death. Defendant asked plaintiff .if he should not have a copy of the application, and was told "No." The notes were executed and delivered, and some time in October, 1905, the policies arrived, and defendant's wife put them into a trunk, where they remained until after her death in February following.

Defendant was an illiterate man, and, while he could read and write his name, he could not read other writing or printed matter. Plaintiff and defendant were members of the Woodmen Lodge, and that defendant relied upon the representations of plaintiff; that not until March following, and about one month after the death of defendant's wife, did he learn what kind of policies he had, when he was informed by Mr. Hickman that the policies of the husband and wife were alike in respect to the terms of payment; that defendant lived some 10 miles from town, and Mr. Hickman did what writing defendant had done. Upon discovering the character of the policy, it was returned to plaintiff by mail, but was afterwards returned by plaintiff. On March 3, 1906, plaintiff wrote defendant, relative to the proof of death of his wife, advising him not to employ a lawyer, and that the $1,000 policy would be at once paid in cash, and asked a settlement of the notes due on defendant's policy, before he would deliver check on the wife's policy. A second letter. was written March 21st, to the same effect; plaintiff still insisting that there was then due defendant on account of his wife's death $1,000 in. cash. Plaintiff's counsel asked defendant but one question on cross-examination, and then stated in open court:

"Now, if it please the court, the plaintiff admits that the policy received by Mr. Summers was not the kind of policy that he wanted, and he thought he was getting, and for the. purposes

of this case, plaintiff admits that all the statements of Mr. Summers are true."

Counsel for defendant in error in their brief say that the law is well established that, where a person has a reasonable opportunity to discover fraud or misrepresentation, and does not do so, he will be estopped from claiming the right to rescind, and further say:

"He applied for a straight life policy; the company, for some reason, did not see fit to issue a life policy, but did send him a 20-year annuity policy. He took it, kept it for five months without complaint, received the benefit of the insurance, and it is now too late to say that, because 'I did not get what I wanted, I will not pay for what I received.'"

The testimony showing the fraud and misrepresentation practiced by plaintiff on defendant stands admitted, and we are called upon to determine whether, under the circumstances, defendant is precluded from setting up as a defense plaintiff's fraudulent conduct, for the reason that defendant, having full opportunity to examine the contents of the policy delivered, failed to do so; hence is bound, not to comply with his contract with plaintiff, but to perform and fulfill conditions of another and different contract substituted by plaintiff without the knowledge or consent of defendant.

The transactions complained of all occurred prior to statehood, and the rights of the parties are to be determined by the law then in force. These rights were continued by section 1 to the Schedule of the Constitution of Oklahoma, providing that no existing rights, actions, suits, proceedings, contracts, or claims shall be affected by the change in the forms of government, but all shall continue as if no change in the forms of government had taken place. The decisions of the United States Supreme Court were the governing law in the Indian Territory, as well as in Oklahoma, prior to November 16, 1907. *Moore v. Atchison, etc., Railway Co.*, 26 Okla. 682, 110 Pac. 1059; *Chicago, etc., Railway Co. v. Newburn*, 27 Okla. 9, 110 Pac. 1065, 30 L. R. A. (N. S.) 432.

The question of acceptance by retaining possession, without objection, of a policy of insurance different from that contracted for has furnished a fertile field of litigation, and there is a diversity of judicial expression upon this point. But here it is only necessary to ascertain and determine the law as laid down by the United States Supreme Court in this question.

*McMaster v. New York Life Ins. Co.,* 183 U. S. 45, 22 Sup. Ct. 10, 46 L. Ed. 64, is a leading case, and controlling on the court in the case under consideration. In that case it appears, that at the time of the application, the company's agent represented to the insured that payment of a single premium would carry the insurance for not only a year, but for an additional month of grace, which was given for the payment of the second premium. The policy as drawn made the second premium payable in less than a year from the date of payment, in pursuance of the request of the agent, indorsed upon the application after it had left the hands of the insured, that it should be dated from the date of the application. The insured died after the expiration of the policy as written, but within the time which would have been covered, had the policy been dated according to the agreement. This case was twice before the Supreme Court. The opinions of the Circuit Court of Appeals on the second appeal (40 C. C. A. 119, 99 Fed. 856) are diverse, and contain elaborate discussions by Sanborn, C. J., concurred in, in a separate opinion, by Thayer, C. J.; Caldwell, C. J., dissenting. Perhaps no better reasoning is to be found than in the strong and vigorous dissenting opinion of Justice Caldwell, who says:

"When the policies were tendered under these circumstances, the insured would have been entirely justified in paying the premiums and accepting the policies without reading them. He had a right to presume that the period of insurance named in the policies conformed to the agreement and to the stipulations and conditions of his application, and to that effect are the authorities, as we shall presently see. When the period of insurance has been agreed upon, it is the almost universal usage for business men to pay the premium and accept their policies without reading them. Under the doctrine laid down by the majority, if a man were to make a written application for a policy of insurance

on his house for one year, and the company should write the policy for one month only, and tender that, and receive a year's premium, and the insured, going on the reasonable assumption that the policy conformed to his application, should accept the policy and put it away in his safe without reading it, his policy would be effective for one month only. * * * The question is not whether the finding of facts establishing the mistake or fraud, but whether the mistake or fraud being conclusively established by the finding of facts, the court will declare that the insured is estopped from availing himself of the truth by the mere receipt of the policies and putting them away without reading them, in reliance upon the truth of the agent's answer and the stipulations of his applications. It must not be forgotten that there is no claim or pretense that the policies in fact expressed the contract of the parties. * * * The contention is that, by receiving the policies under the circumstances mentioned, the insured is 'conclusively presumed' to have assented to all their provisions, and will not be heard to say to the contrary. The rule for the application of estoppels is thus inverted and applied in favor of the company, when it is obvious that it is the company that is estopped from setting up the defense relied on.

"Estoppels are invoked to prevent and relieve from fraud, not to shield and protect it. The most frequent occasion for invoking the doctrine is where one party makes a representation, upon the faith of which the other party acts and pays money, or changes his position, or refrains from doing something he otherwise would do. In all such cases, the party making the representation is estopped from contesting its truth. It will be perceived at a glance that the estoppel in this case applies to the insurance company, and not to the insured. The insured made no representation to the company, and the company parted with no money or other valuable thing on the faith of any false statement that he made. Nor did it do or omit to do anything on account of the insured putting away the policies without reading them. But, on the faith of the solemn assurance of the company's agent that the policies insured him for 13 months, the insured parted with his money, and refrained from reading his policies and from taking out policies in other companies. Upon the faith of the truth of the agent's representations, the insured rested confidently in the belief that he had made provision for his family in the event that he died at any time within 13 months from that date."

On the final appeal to the United States Supreme Court, 183 U. S. 45, 22 Sup. Ct. 10, 46 L. Ed. 64, the judgment of the Circuit Court of Appeals was reversed, notwithstanding the policy containing the change of time of payment was for over 12 months in the possession of the insured. Mr. Chief Justice Fuller, in delivering the opinion of the court, among other things, said:

"When, then, McMaster signed these applications, he understood, and the company by its agent understood, that if the risks were accepted at the home office he would, by paying one year's premium in full, obtain contracts of insurance which could not be forfeited until after the expiration of 13 months. The company accepted the risks and issued the policies December 18th, and they were delivered and the premiums paid December 26th. Bearing in mind that McMaster had made no request of the company in respect to antedating the policies, and was ignorant of the interpolation of the agent, and ignorant of the fact, and was not informed or notified in any way, of the insertion of December 12th as the date for subsequent payments, he had the right to suppose that the policies accorded with the applications as they had left his hands, and that they secured to him, on payment of the first annual premiums in advance, immunity from forfeiture for 13 months. And the agent assured him that this was so. The situation being thus, we are unable to concur in the view that McMaster's omission to read the policies when delivered to him and payment of the premiums made constituted such negligence as to estop plaintiff from denying that McMaster, by accepting the policies, agreed that the insurance might be forfeited within 13 months from December 12, 1893. *Supreme Lodge K. & P. v. Withers,* 177 U. S. 260, 20 Sup. Ct. 611, 44 L. Ed. 762, and cases cited; *Fitchner v. Fidelity Mutual Fire Ass'n,* 103 Iowa, 279, 72 N. W. 530; *Hartford Steam Boiler Inspection & Ins. Co. v. Cartier,* 89 Mich. 41, 50 N. W. 747."

In *Union Mutual Insurance Company v. Wilkinson,* 13 Wall. 222, 20 L. Ed. 617, it is said by Mr. Justice Miller:

"The principle is that, where one party has by his representations or his conduct induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he would not in a court of justice be permitted to avail himself of that advantage. And, although the cases to which this principle is to be applied are not

as well defined as could be wished, the general doctrine is well understood, and is applied by courts of law, as well as equity, where the technical advantage thus obtained is set up and relied on to defeat the ends of justice, or establish a dishonest claim."

In *Equitable Safety Insurance Company v. Hearne,* 20 Wall. 494, 22 L. Ed. 398, it is said by Justice Swayne:

"It is not denied that the correspondence constituted a preliminary agreement. Such, clearly, was its effect. The policy was intended to put the contract in a more full and formal shape. The assured was bound to read the letters of the company in reply to his own with great care. It is to be presumed he did so. He had a right to assume that the policy would accurately conform to the agreement thus made, and to rest confidently in that belief. It is not probable he scanned the policy with the same diligence as the letters of the company. They tended to prevent such scrutiny, and, if it were necessary, threw him off his guard."

The decisions of the Supreme Court find support in a large number of well-considered cases from many of the state and federal courts, and the importance of the question involved will furnish sufficient cause for a review and citation of some of the authorities.

In *Fireman's Fund Insurance Co. v. Norwood,* 69 Fed. 71, 16 C. C. A. 136, Caldwell, C. J., speaking for the Circuit Court of Appeals of the Eighth Circuit, said:

"In the case of *Insurance Company v. Steiger,* 26 Ill. App. 228, the same question arose, and the court said: 'Plaintiff's testimony that defendant's agent called on him, and solicited a renewal, and asked how much insurance he already had; that he said he did not know, but referred the agent to two other agencies in the city for information; that a few days later he found on his desk the policy in suit, and that, supposing it to be properly drawn, he placed it in his safe without examination'—supports a finding for the plaintiff on the defense of other insurance not allowed by the policy."

In *McElroy v. British America Assurance Co.,* 36 C. C. A. 615, 94 Fed. 990, it is said:

"It would certainly have been an act of prudence on his part to read the entire policy; but his neglect to do so cannot excuse the company for the default of the agent in not writing

the contract in accordance with the representations made by the insured. The insured had a right to rely upon the agent's performing his duty of making the contract in conformity with the information given; and the agent's failure to do so, whether the result of a mistake or of a deliberate fraud, cannot operate to the prejudice of the insured. The contract of insurance is preeminently one that should be. characterized by the utmost good faith on both sides."

In *Hartford Steam Boiler Inspection & Ins. Co. v. Cartier*, 89 Mich. 41, 50 N. W. 747, the court said:

"Not only was defendant's attention not called to this change, but, when asked with reference to an exercise of the right of cancellation, plaintiff's agent neglects a plain duty, conceals the fact of change, and misleads and deceives the defendant. The question here is not as to the effect of a naked acceptance of a policy, without examination, but as to whether, in the absence of actual notice, a party can be bound by a new restriction in a policy concerning the existence of which he has been lulled to sleep, and actually misled and deceived. In *Gristock v. Ins. Co.*, 87 Mich. 428, 49 N. W. 634, Justice Grant, speaking for this court, said: 'Plaintiff had a right to rely upon the assumption that his policy would be in accordance with the terms of his oral application. If the defendant desired to make it anything different, he should, in order to make it binding upon plaintiff, have called his attention to those clauses which differed from the oral application.' "

In *Kister v. Lebanon Mutual Insurance Co.*, 128 Pa. 553, 18 Atl. 447, 5 L. R. A. 646, 15 Am. St. Rep. 696, it is said:

"A copy of the application accompanied the policy, and it is argued that Kister could and ought to have read it; and if he had done so he would have seen the answers were untrue. These are considerations to be addressed to the jury. We cannot say that the law, in anticipation of a fraud upon the part of a company, imposed any absolute duty upon Kister to read his policy when he received it, although it certainly would have been an act of prudence on his part to do so. *Insurance Co. v. Bruner*, 23 Pa. 50; *Insurance Co. v. Wilkinson*, 13 Wall. 222, 20 L. Ed. 617. One thing is certain, however—the company cannot repudiate the fraud of its agent, and thus escape the obligations of a contract consummated thereby, merely because Kister accepted in good faith the act of the agent, and without examination."

In *Fitchner v. Fidelity Mutual Fire Association,* 103 Iowa, 276, 72 N. W. 530, the court, in the opinion, said:

"The mere failure of the assured to read his application, or the copy of it on the policy, does not establish negligence. * * * Nor is the mere omission to read the policy negligence. Laud had no reason to suppose the policy and application were drawn differently than understood. As to matters affecting the rights of the firm at the time the policy was delivered, or in the future, it must be charged with notice; but the law did not require him to search through the policy to ascertain past mistakes or misstatements of the agent of the company. Under the circumstances disclosed, it cannot be said that the plaintiff was negligent in failing to discover the error of the defendant and its agent."

In *Palmer v. Hartford Fire Insurance Co.,* 50 Conn. 488, 9 Atl. 248, the court said:

"But if the underwriter solicits a person to purchase of him indemnity against loss by fire, and if they unite in making a written draft of all the terms, conditions, and stipulations which are to become a part of or in any way affect the contract, and if the underwriter promises to make and sign a copy thereof, and deliver it as the evidence of the terms of his undertaking, and if a material and variant condition is by mistake inserted, and the variant contract is delivered, and the stipulated premium is received and retained, the court will not hear the claim that he is entitled to the benefit of the variant conditions, where the other party had neither actual nor imputed knowledge of the change. In his promise to make and deliver an accurate copy, there is a justification before the law for the omission of the other party to examine the paper delivered, and for his assumption that there is no designed variance. A man is not, for his pecuniary advantage, to impute it to another as gross negligence that the other trusted to his fidelity to a promise of that character."

In *Albany City Savings Institution v. Burdick,* 87 N. Y. 40, Earl, J., in delivering the opinion of the court, said:

"It has certainly never been announced as the law of this state that the mere omission to read and know the contents of a written instrument should bar any relief by way of a reformation of the instrument on account of mistake or fraud. It is the general rule that, where a written instrument fails to conform to the agreement of the parties in consequence of the mutual

mistake of the parties, however induced, or the mistake of one party and fraud of the other, a court will reform the instrument, so as to make it conform to the actual agreement between the parties. * * * Mrs. Burdick intrusted Martin to draw the deed, and he was bound to have it drawn so as to express the agreement between the parties; and when he brought and delivered the deed to her it was in effect a representation to her that the deed had been so drawn. She was not bound to assume that he might be practicing fraud upon her, or representing a falsehood; and she cannot be charged with negligence in believing confidently that he was acting in good faith and telling the truth. * * * If the rule were otherwise, the unwary and confiding, who need the protection of the law the most, would be left a prey to the fraudulent and artful practices of evildoers."

In *Otte v. Hartford Life Insurance Co.*, 88 Minn. 423, 93 N. W. 608, 97 Am. St. Rep. 532, it was said by the court:

"We do not deem it necessary to go further in dealing with this claim than to say that, since the insured is to be treated as having dealt directly with the company when he signed the application, the insurer took it upon itself to make out the application and to answer the questions truthfully; hence it cannot transfer the results of its own misconduct to the innocent victim of its deception, who parted with his money in the belief, induced by defendant, that he was obtaining indemnity; nor can we hold that the insured was bound to suspect a dishonest purpose on the part of the insurer, contrary to the dictates of good faith and all rules of legal presumption, and hence required to institute an inspection of the policy upon its receipt to ascertain if he had been deceived."

As stated at the outset, the authorities on this question are not harmonious, and it would serve no useful purpose, and would protract this opinion to an unjustifiable length, to cite all the authorities pro and con. It is sufficient to say that the decision of the United States Supreme Court is controlling on this court in all cases where the rights of the parties attached and became fixed prior to statehood. *Northern Assurance Co. v. Grandview Ins. Co.*, 183 U. S. 398, 22 Sup. Ct. 133, 46 L. Ed. 213; *Id.*, 73 Neb. 149, 102 N. W. 246; *Bidwell v. Astor Mutual Insurance Company*, 16 N. Y. 263; *Copeland v. Dwelling House Insurance Company*, 77 Mich. 554, 43 N. W. 991, 17 Am. St. Rep. 414;

*N. British Insurance Company v. Steiger,* 26 Ill. App. 228; *Barnes v. Hekla Fire Insurance Company,* 75 Iowa, 11, 39 N. W. 122, 9 Am. St. Rep. 450; *Miotke v. Milwaukee Mech. Insurance Company,* 113 Mich. 166, 71 N. W. 463; *Bennett v. Mass. Mutual Life Insurance Co.,* 107 Tenn. 371, 64 S. W. 758; *Burson v. Fire Association of Philadelphia,* 136 Pa. 267, 20 Atl. 401, 20 Am. St. Rep. 919; *Thackery M. & S. Co. v. American Fire Ins. Co.,* 62 Mo. App. 293; *German Fire Ins. Co. v. Guech et al.,* 130 Ill. 345, 23 N. E. 112, 6 L. R. A. 838; *Franklin v. Atlantic Fire Ins. Company,* 42 Mo. 456; *Michigan Mutual Life Ins. Co. v. Leon,* 138 Ind. 636, 37 N. E. 584.

Defendant evidently knew little of the complexities of life insurance. He was a member of the same lodge as plaintiff, and depended upon the representations made by him as to what character of policy he would receive; in fact, was assured by plaintiff that he knew exactly the character of policy defendant wanted, and that he would get it for him.

No better evidence of the fraud practiced is to be found than in the letters written by plaintiff, who, it seems, was a general agent, on March 3d and 21st, in which he still knowingly misrepresented the facts as to the character of the policy theretofore taken out on the life of defendant's wife, and the admonition of plaintiff that it was not necessary to employ a lawyer. That defendant relied implicitly upon the promises and representations of plaintiff, there is no doubt. Having relied on these representations, it cannot be said that he was charged with the duty of having read and explained to him the terms and conditions of the policy received.

He had the right to rely upon his contract, and to believe that the policy received was of the kind for which he had contracted; certainly it was not incumbent upon him to suspect that he had been or was about to be wronged, and that another and radically different policy would be or had been delivered him. The defendant's illiteracy, taken in connection with the fraud practiced upon him by plaintiff, presents a different state

of facts from that found in many of the reported cases holding to the contrary doctrine.

In *State Insurance Co. v. Gray*, 44 Kan. 741, 25 Pac. 221, both the insured and his wife were old, feeble, and illiterate. The insured signed the application and premium notes by mark, and afterwards retained in his possession the policy received. He could neither read nor write. Horton, C. J., speaking for the court, said:

"It ought not to be held that a person not able to read or write, by merely holding a policy in his possession which contains his application, signed with his mark, thereby approves the action of the agent or solicitor in falsely or improperly taking his application, and becomes, by such holding such policy, a participant in the fraud committed by the agent or solicitor."

In the foregoing case, the judgment of the district court in favor of the insured was affirmed.

In the case of *Lewis v. Mutual Reserve Fund Loan Association*, 27 South. (Miss.) 649, the court says:

"How can it be inexcusable negligence not to read, when one cannot read? How can one be bound by an obligation he never signed, and whose contents he never knew?"

In Cooley's Briefs on the Law of Insurance (Vol. 3, p. 2574), it is said:

"The principle that the insured is not bound to know the contents of the application, and may rely on the agent's assurances that his answers have been correctly written, will, of course, apply with special force where the insured is illiterate and unable to read, or is ignorant of the language"—citing cases.

In *Caldwell v. Life Insurance Company of Virginia*, 140 N. C. 100, 52 S. E. 252, it is said in the syllabus:

"Where an illiterate woman was induced to take out life insurance by the agent's representations that she could 'draw out' her claim at the end of 10 years, where in fact the policy as written gave her no such privilege, she could, on discovering the fact, recover the money paid as premiums."

*Continental Ins. Co. v. Ruckman*, 127 Ill. 364, 20 N. E. 77, 11 Am. St. Rep. 121; *Phoenix Insurance Co. v. Golden*, 121 Ind. 524, 23 N. E. 503; *Home Insurance Company v. Sylvester*, 25 Ind. App. 207, 57 N. E. 991; *Hartford Fire Insurance Co. v.*

*Haas,* 87 Ky. 531, 9 S. W. 720, 10 Ky. Law Rep. 573, 2 L. R. A. 64; *State Insurance Company v. Jordan,* 29 Neb. 514, 45 N. W. 792; *Omaha Fire Insurance Co. v. Crighton,* 50 Neb. 314, 69 N. W. 766; *Hayes v. Saratoga & W. Fire Insurance Co.,* 81 App. Div. 287, 80 N. Y. Supp. 888; *Home Circle Society No. 1 v. Shelton* (Tex. Civ. App.) 81 S. W. 84; *Sullivan v. Phoenix Insurance Company,* 34 Kan. 170, 8 Pac. 112; *State Insurance Company v. Gray,* 44 Kan. 731, 25 Pac. 197; *Kansas Farmers' Fire Ins. Co. v. Saindon,* 52 Kan. 486, 35 Pac. 15, 39 Am. St. Rep. 356; *La Marche v. New York Life Insurance Co.,* 126 Cal. 498, 58 Pac. 1053.

Discovery of the fraud was made in March, whether before or after the letters of March 3d and 21st, the record does not show. We find in these letters plaintiff's reassurance of the terms of payment of the wife's policy, which had matured by her death, and which reassurance was untrue. *Maher v. Hibernia Ins. Co.,* 67 N. Y. 283; *German Ins. Co. v. Davis,* 6 Kan. App. 268, 51 Pac. 60. It should be kept in mind that both policies were believed by the insured to be alike in respect to the time and manner of payment, and this assurance of how his wife's policy should be paid was equivalent to the same representations concerning his own policy.

In *Cottrill v. Krum,* 100 Mo. 400, 13 S. W. 753, 18 Am. St. Rep. 549, the court said:

"To use the language of another: 'The doctrine of notice has no application, where a distinct representation has been made. A man to whom a particular and distinct representation has been made is entitled to rely on the representation, and need not make any further inquiry, although there are circumstances in the case from which an inference, inconsistent with the representation, might be drawn.' Kerr on Fraud, p. 80. 'No man can complain that another has relied too implicitly on the truth of what he himself stated.' Kerr on Fraud, p. 81. The same general principle has been expressed by this court in the following terms: 'It is no excuse for, nor does it lie in the mouth of, the defendant to aver that plaintiff might have discovered the wrong, and prevented its accomplishment, had he exercised watchfulness, because this is but equivalent to saying: "You

trusted me; therefore I had the right to betray you." ' *Pomeroy v. Benton,* 57 Mo. 531. The same idea is expressed in another opinion thus: 'We doubt if it is equity to allow a sharper to insist on the fulfillment of his bargain, on the ground that his victim was so destitute of sagacity as to make no further inquiries.' *Wannell v. Kern,* 57 Mo. 478."

Where it is sought to enforce a contract, and a plea of fraud is interposed, the defense will be sustained, even though the defendant may have been wanting in ordinary prudence in relying on the representations of the other contracting party as to the tenor or contents of the writing; the rights of innocent parties not intervening. They might still insist that it was not their contract. Smith on the Law of Fraud, sec. 250; *Maxfield v. Swarts* (1890) 45 Minn. 150, 47 N. W. 448, 10 L. R. A. 606; *Aultman v. Olson,* 34 Minn. 450, 26 N. W. 451; *Frohreich v. Gammon,* 28 Minn. 476, 11 N. W. 88; *Miller v. Sawbridge,* 29 Minn. 442, 13 N. W. 671; *Albany City Sav. Inst. v. Burdick,* 87 N. Y. 40; *Linington v. Strong,* 107 Ill. 295.

It is said in Bigelow on Fraud (page 534):

"Where the parties do not stand upon an equal footing, the objection to a plea or claim of false representations that the party with whom they were made was 'negligent' in not making inquiry or examination has still less force, and would nowhere be allowed. This rests upon the just and salutary ground that the injured party in such a case is in the power, to a greater or less extent, of the wrongdoer, so as to be more easily imposed upon than if he were standing at arm's length, and acting upon an equal footing with him."

In *McCarthy v. New York Life Insurance Co.,* 74 Minn. 530, 77 N. W. 426, the court lays down this rule:

"The next contention is that, if plaintiff was deceived by the representations of the agent, it was the result of his own folly or negligence; for, if he had taken the least pains to examine or read the application when he signed it, or the policy when he accepted it, he could and would readily have discovered the falsity of the representations. If there is anything well settled by the decisions of this and other courts, it is that, as between the original parties to a contract, one who has intentionally deceived the other to his prejudice is not to be heard to say, in defense of the charge of fraud, that the innocent party ought not to

have trusted him. It does not lie in the mouth of the party guilty of making the false representations to say to the other party, 'You were a fool, or negligent, in believing and relying upon my statements.' "

In *Bennett et ux. v. Massachusetts Life Ins. Co.*, 107 Tenn. 371, 64 S. W. 758, Wilkes, J., in passing upon this question, said:

"We think that the suit was brought with sufficient promptness after the facts were discovered; and the principal difficulty is in the fact the complainant did not examine the written answers at the time they were made, and not within two years thereafter, although a copy of them was in his possession during that time. Reposing confidence in the examiner, and assuming that he wrote the answers correctly, the complainant neither read the medical examination when it was made, nor until two years or more thereafter, when he became aware of the fraud, and thereupon sought to avoid it. While it was an act of negligence in complainant not to have examined the writing, it was negligence superinduced by the confidence which he reposed in the medical examiner, and this enabled the company to practice the fraud upon the assured. We think that, whatever might be the rights of third persons growing out of this matter, it does not lie in the mouth of the company, upon the one hand, to confess its fraud, and, on the other, to say that, 'you are estopped to rely upon that fraud, because you have not more promptly discovered it.' As a matter of common observation, even good business men do not examine the various conditions and statements in their policies, as they should; but we think that when the fraud is virtually confessed, and from the very nature of the case must have been premeditated and designed, it would be going too far to hold that, because the assured was lulled and misled by his confidence in the agent of the assurer, the company can take advantage of this to make its own fraud effective."

It is but the assertion of the principle that it does not lie in the mouth of the one guilty of fraud, and who in court confesses thereto, to say: "Having acted on the fraudulent representations, you yourself are estopped."

It is no answer to say that "for some reason the company did not see fit to issue him a life policy, but did send him a 20-year annuity policy." Defendant did not contract for such a policy, but, on the contrary, was somewhat insistent on the kind of policy he wanted. No notice was fur-

nished that a very different policy was sent him. He relied fully —as he had a right to do—upon the representations of the plaintiff, and, when the fraud was discovered, acted promptly in returning the substituted policy. He has been guilty of no wrong; neither is any negligence imputable to him for not doing something concerning which he knew nothing. The doctrine of estoppel can never be properly invoked in such a case, and it was error in the trial court to direct a verdict for plaintiff.

The judgment of the lower court should therefore be reversed, and judgment rendered for plaintiff in error.

By the Court: It is so ordered.

All the Justices concur.