## MT. HOPE NURSERIES CO. v. JACKSON.

No. 2281.   Opinion Filed November 26, 1912.
### (128 Pac. 250.)

**SALES**—Action for Price—Misrepresentations of Seller's Agent. An answer, in an action for the price of trees, which alleged that defendant stated to plaintiff's agent, engaged in selling trees, that he wanted the trees to plant a tract of land, and that he did not know how much land there was in the tract, or how many trees it would take to plant it, that plaintiff's agent stated he had had experience in planting trees and could make the estimate, and that said agent measured, or pretended to measure, the ground, and informed defendant that it would take 5,000 trees to plant it, that relying on this statement he signed an order for 5,000 trees, and that in fact the tract was much smaller than estimated by the agent, and a much smaller number of trees was required, stated a good defense to the action; and when the allegations of the answer were supported by evidence reasonably tending to sustain them a verdict for the defendant should not be disturbed.

(Syllabus by Rosser, C.)

*Error from Alfalfa County Court;*
*F. M. Gustin, Judge.*

Action by the Mt. Hope Nurseries Company against G. F. Jackson.   Judgment for defendant, and plaintiff brings error. Affirmed.

*A. C. Beeman,* for plaintiff in error.

*Titus & Carpenter,* for defendant in error.

Opinion by ROSSER, C.   This action was originally instituted in the justice court of the city of Cherokee, Alfalfa county, by the Mt. Hope Nurseries Company against G. F. Jackson. It was appealed from that court to the county court of Alfalfa county, where there was a verdict and judgment for the defendant, and the plaintiff appeals.

The bill of particulars in the justice court alleged the execution of a written order for some trees by the defendant, and attached the order as an exhibit.   The defendant filed an answer, in which he alleged that at the time of the making of the contract the plaintiff's agent came to his house and solicited him to purchase trees; that at that time he was ill, and was mentally and

physically incapacitated; that he showed plaintiff's agent a plat of ground which he desired to plant in trees, and told the agent that he was not able to make any estimate of the ground or the number of trees that it would require to plant it, and that the agent measured the plat of ground and made an estimate, or pretended to make an estimate, and stated to the defendant that the plat contained over two acres, and that 5,000 trees would be required to plant same; that defendant never measured the tract, and did not at that time know the area; that the agent represented that he had been in the tree business a great number of years and knew the exact requirements in planting forest trees, and that the defendant believed the statements and relied upon them, and so believing signed the order; that within a few days after the transaction, the defendant, having more fully recovered from his illness, measured the plat of ground and found that it contained only 95 square rods; and that he immediately notified the plaintiff of the mistake and asked to have it corrected.

There was evidence reasonably tending to sustain the allegations of the answer. The defendant declined to take all the trees ordered, but offered to take and pay for enough to plant the plat of ground.

Plaintiff urges that the allegations of the answer are insufficient to constitute a defense, and that it was entitled to a peremptory instruction. It is plaintiff's contention that if defendant was deceived it was his own negligence.

There are authorities sustaining the view that it is the duty of a person entering into a contract to investigate for himself; and where he has the opportunity to investigate for himself, and neglects to do so, he cannot complain that he has been defrauded. In other words, it is held that his negligence prevents him from setting up the fraud. But this is not the law. A party who misrepresents a matter to another, where the other relies on the statements made, is liable for the misrepresentations. A man who makes a false statement to another, for the purpose of inducing that other to enter into a contract with him, and which the other believes, and, believing, is thereby induced to enter into a contract with him, will not be heard to say: "It was not my mis-

statements, but your negligence in believing them, that injured."
It is not for the plaintiff to say that the defendant relied too im-
plicitly on the statements of its agent. *Eaton v. Winnie,* 20 Mich.
156, 4 Am. Rep. 377; *Cottrill v. Krum,* 100 Mo. 397, 13 S. W.
753, 18 Am. St. Rep. 549; *Wilson v. Higbee* (C. C.) 62 Fed.
723; *Speed v. Hollingsworth,* 54 Kan. 436, 38 Pac. 496. In
*Strand v. Griffith,* 97 Fed. 854, 38 C. C. A. 444, the learned and
upright Henry C. Caldwell said:

"There is no rule of law which requires men in their busi-
ness transactions to act upon the presumption that all men are
knaves and liars, and which declares them guilty of negligence,
and refuses them redress, whenever they fail to act on that pre-
sumption. The fraudulent vendor cannot escape from liability
by asking the law to applaud his fraud and condemn his victim
for his credulity. 'No rogue should enjoy his ill-gotten plunder
for the simple reason that his victim is by chance a fool.' *Cham-
berlain v. Fuller,* 59 Vt. 256, 9 Atl. 832. The Supreme Court of
Minnesota, in the case of *Maxfield v. Schwartz,* 45 Minn. 150,
47 N. W. 448, 10 L. R. A. 606, says: 'If Berens and Machtscheim
were seeking to enforce the written contract, a plea of fraud, such
as is here presented, would constitute a defense, even though the
defendants may have been wanting in ordinary prudence in rely-
ing upon the representations of the other contracting party as to
the tenor or contents of the writing. They might still rely upon
the defense that this was not their contract. *C. Aultman & Co.
z. Olsen,* 34 Minn. 450, 26 N. W. 451; *Frahreich v. Gammon,* 28
Minn. 476, 11 N. W. 88; *Miller v. Sawbridge,* 29 Minn. 442,
13 N. W. 671; *Institution v. Burdick,* 87 N. Y. 40; *Limington v.
Strong,* 107 Ill. 295; *Gardner v. Trenary,* 65 Iowa, 646, 22 N. W.
912; *Thoroughgood's Case,* 2 Coke, 9; *Stanley v. McGuaran,* 11
L. R. Ir. 314; *Redgrave v. Hurd,* 20 Ch. Div. 1, 13; Po. Const.
401 *et seq.,* and cases cited; Bigelow, Frauds, 523-525. While
in the ordinary business transactions of life men are expected
to exercise reasonable prudence, and not to rely upon others, with
whom they deal, to care for and protect their interests, this re-
quirement is not to be carried so far that the law shall ignore or
protect positive, intentional fraud successfully practiced upon
the simple-minded or unwary. As between the original parties,
one who has intentionally deceived the other to his prejudice is
not to be heard to say, in defense of the charge of fraud, that the
innocent party ought not to have trusted him.' The vendor can-
not complain that the purchaser relied too implicitly on the truth
of the representations he himself made, knowing them to be false,

but intending that they should be received and acted upon by the purchaser as true. In the case of *Hale v. Philbrick,* 42 Iowa, 81, the court says: 'We are not inclined to encourage falsehood and dishonesty by protecting one who is guilty of such fraud, on the ground that his victim had faith in his word, and for that reason did not pursue inquiries that would have disclosed the falsehood.' And in *Graham v. Thompson,* 55 Ark. 299, 18 S. W. 58 [29 Am. St. Rep. 40], the court says: 'The very representations relied upon may have caused the party to desist from inquiry and neglect his means of information; and it does not rest with him who made them to say that their falsity might have been ascertained, and it was wrong to credit them. To this principle many authorities might be cited. *Gammill v. Johnson,* 47 Ark. 335, 1 S. W. 610; Bigelow, Estop. 627; *Dodge v. Pope,* 93 Ind. 480; *David v. Park,* 103 Mass. 501; *Holland v. Anderson,* 38 Mo. 55; *Evans v. Forstall,* 58 Miss. 30; *Kiefer v. Rogers,* 19 Minn. 32 (Gil. 14).' In *Warder v. Whitish,* 77 Wis. 430, 46 N. W. 540, the court says: 'A person cannot procure a contract in his favor by fraud, and then bar a defense to a suit on it, on the ground that, had not the other party been so ignorant or negligent, he could not have succeeded in deceiving him.' 'As between the original parties,' says the Supreme Court of Illinois in *Linington v. Strong,* 107 Ill. 302, 'when it appears that one has been guilty of intentional and deliberate fraud, by which, to his knowledge, another has been misled and influenced in his action, he cannot escape the legal consequences of his fraudulent conduct by saying that the fraud might have been discovered had the party whom he deceived exercised ordinary care and diligence.' In *Reynell v. Sprye,* 1 De Gex, M. & G. 549 (710), 42 Eng. Reprint, 729, the court said: 'However negligent the party may have been to whom the incorrect statement has been made, yet that is a matter affording no ground of defense to the other. **No man can** complain that another has too implicitly relied on the truth of things he has himself stated.' "

*Summers v. Alexander,* 30 Okla. 198, 120 Pac. 601, contains a statement of the rule as it applies in certain classes of insurance cases, and the authorities applying the rule in such cases are there collected.

The maxim *"ex dolo malo non oritur actio"* governs in all these cases. It would be a reproach to the law if a man were permitted to evade the consequences of his own wrongdoing by the claim that, notwithstanding he was guilty of a falsehood, the opposite party was liable because he negligently believed it.

Of course, there are cases where it is apparent that the party alleging fraud could not have been deceived. He cannot close his eyes and refuse to see what is within plain view. A man selling a cow to a farmer or dairyman in his right mind represents that she is a good Jersey cow. They are both looking at the cow at the time, and she has horns three feet long, with all the other appearances of a common range cow. ˙The buyer could not believe the seller in that case. He could not be deceived; for the very appearance of the animal, to any one familiar with cows, would inform the prospective purchaser that the seller was lying. His testimony that he was deceived could not be believed in such a case, no matter how stoutly he swore to it. Not because of negligence, but because the statement that he was deceived would be so unreasonable as to be incredible. So in cases where persons able to read sign written instruments they are conclusively presumed to know the contents; but if artifice or active fraud is resorted to to prevent them from reading the instrument they may rely upon the fraud as a defense. Whether a person is or is not deceived by mistatements of another is a question of fact; and if he is actually deceived by active, positive fraud he can always set up the fraud as a defense, when sued on the contract, or as a ground for recovery, where he has on his part performed the terms of the contract.

It is urged that the court erred in overruling plaintiff's motion to strike out the paragraph of the answer, the substance of which is set out above. A pleading can be attacked by a motion only when it is redundant or irrelevant. The question of whether it states a cause of action or defense can only be raised by demurrer. But, as appears from what has been said, the paragraph stated a defense, and was good against a demurrer. Other questions are made with reference to instructions given and refused, but they are all based upon the proposition that defendant was negligent in not ascertaining for himself the amount of land. The plaintiff cannot raise this question.

The judgment should be affirmed.

By the Court: It is so ordered.