MAY *v.* STANDARD FIRE INSURANCE CO.

1. INSURANCE—CONTRACTS—EVIDENCE—SUFFICIENCY.
   A conversation between insurer's agent and insured at the time of the renewal of an insurance policy, in which insured informed the agent that he expected to remove part of the insured goods to his summer cottage and wanted same covered, to which the agent responded "All right," *held,* insufficient to constitute a contract of insurance at the new location.

2. SAME—CUSTOMS AND USAGES—EVIDENCE.
   Evidence *held,* to show that the custom in previous years had been for the agent to make the transfer on his register on notice given him by the insured.

3. SAME—NOTICE OF REMOVAL NOT BINDING UNTIL RECEIVED—TRANSFER OF INSURANCE.
   Where insured's letter notifying insurer's agent of the removal of the goods and requesting transfer of insurance thereon in a certain amount was deposited in the post office but had not been received by the agent and no transfer had been made at the time the goods were destroyed by fire, the insurer was not liable for the loss.

4. SAME—WAIVER OF LOCATION CONDITION.
   Issuance of an insurance policy on personal property with knowledge that part of the goods were later to be removed to insured's summer cottage, *held,* not a waiver of the location condition in the policy.

Appeal from superior court of Grand Rapids; Dunham (Major L.), J.   Submitted June 16, 1922. (Docket No. 63.)   Decided November 2, 1922.

Bill by Meyer S. May against the Standard Fire Insurance Company and others to reform a policy of insurance, and to enforce performance.   From a decree dismissing the bill, plaintiff appeals.   Affirmed.

On effect of temporary absence of insured property from location stated in policy, see note in 22 L. R. A. (N. S.) 848.

*G. A. Wolf* (*Colin P. Campbell*, of counsel), for plaintiff.

*Laurence W. Smith*, for defendants.

MCDONALD, J.   The Standard Fire Insurance Company has an office in the city of Grand Rapids, Michigan, in charge of the defendants Thomas Benjamin and William A. Benjamin, who are authorized to insure property and to sign and issue policies of insurance.   On June 10, 1919, they issued a renewal policy upon the household furniture of the plaintiff in the sum of $3,000 while located in his brick residence at No. 450 Madison avenue S. E., Grand Rapids, Michigan, and not elsewhere.   At the time it was issued the plaintiff says he had the following conversation with Mr. Benjamin:

"Mr. Benjamin called me up on the phone and said, 'I am renewing your insurance policy on your household goods, but in another company,' and I said, 'Is it just as good a company as the one it has been in?' and he said, 'Yes, it is just as good.'   It was on account of the war; the other was a German policy, the old one was the Aachen & Munich, which they had renewed in an American company.   He said, 'Yes, just as good a company;' so then I said, 'I have rented the Weguson cottage at Ottawa Beach, and I am going to move down there as usual, and want you to cover me.' He said, 'All right,' and that was all there was.   I don't think there was anything said about the amount to be covered on there.

"*Q.* What did he say about transferring it?

"*A.* All right."

Thereafter, about June 27, 1919, the plaintiff removed a part of his goods from the residence on Madison avenue to the cottage at Ottawa Beach.   On June 30th, he mailed to the Benjamin Agency the following notice:

"Inasmuch as I have moved part of my household goods to Ottawa Beach, wish you would kindly transfer

half of my policy in the Standard Fire Insurance Company to cover my household goods at Ottawa Beach; this would be $1,500 on household goods in the Weguson cottage at Ottawa Beach.

"Kindly note on your calendar to call me up about this about the 10th of September, we will be moved back to town at that time."

This letter, properly addressed, was deposited in the mail at Grand Rapids at 4:30 p. m., on the 30th. On the following morning, before it was received by the Benjamins, the goods which had been removed to Ottawa Beach were destroyed by fire.   The plaintiff at once gave notice of his loss but defendants denied all liability and refused to settle.   In his bill the plaintiff asks that the policy of June 10, 1919, be corrected and reformed to cover the household goods removed to Ottawa Beach up to $1,500 in value, and that he may recover such amount for his loss.   On the hearing the trial judge made a decree dismissing the bill.   From this decree plaintiff has appealed.

Counsel for the plaintiff first contend that there was a binding contract of insurance made in the conversation of June 10th, which insured the goods while in the Weguson cottage at Ottawa Beach, and that the failure of the agent to write such a provision in the policy was a mistake for which it should be reformed. The conversation referred to does not constitute a definite and complete contract for insurance unless it is supplemented, as plaintiff claims it is, by the custom between the parties for protecting the goods, which he annually removed to Ottawa Beach during the resort season.   We find nothing in the evidence as to custom that by reference would supply the essential elements lacking in the conversation of June 10th.

The plaintiff testified:

"The custom was not to cover me for $1,500 down there every summer automatically.   It would have to be up on notice.   *   *   *   It wasn't their practice

to indorse on the policy, it was just indorsed on the book up there, because it was just for a couple of months, and they didn't send binders to attach to the policy in previous years."

Mr. Benjamin testified that there was no custom, and that only once before did they cover the goods at the beach; that in the summer of 1917 they indorsed a removal permit on the policy. Mr. Beach, employed in the Benjamin Agency in 1919, testified that the record of the change of the household goods from Madison avenue in 1917 was entered in Mr. Benjamin's register with pen and ink, and that no removal permit was attached to it. Miss Clancy, plaintiff's bookkeeper, testified that after he had removed the goods to Ottawa Beach in 1919, he instructed her to call the Benjamin Agency and tell them "I want a transfer the same as I had the year before." The weight of the evidence shows that the custom in previous transactions was to make the transfer by indorsement on the agent's register on notice by the insured, and that the indorsements were not made on the policy.

Mr. Benjamin testified that

"The indorsement consists of the amount of insurance carried, and what is transferred and the year it is transferred, and the new rate, whether there is an extra premium or a return premium, and also the date at which it is available."

Considering these facts in connection with the conversation of June 10th, it is very clear that the parties did not have in mind writing into the policy a provision insuring the goods at Ottawa Beach as well as at Madison avenue. There is no evidence that they contemplated any such method of coverage. There was no agreement to make any removal indorsement on the register at any particular time prior to the removal of the goods, and no occasion for it until the

insured was ready to move and knew the amount of insurance he desired.   Previously he had been covered for $1,000; on this occasion he desired $1,500, but that amount was not made known to the agency until the letter of June 30th, which was not received until after the goods were destroyed by the fire.   It is apparent that Mr. May understood that his goods were not protected until the Benjamin Agency was notified of the removal and of the amount of insurance desired.   This is evidenced by his letter of June 30th, written immediately after he had moved and for the purpose, as he testifies, that Mr. Benjamin might, "make whatever changes were necessary and cover me while I was down there."   That he knew of the possible consequences of delay in giving notice appears from the fact that the day after he had moved the goods he made seven or eight attempts to reach Benjamin by telephone, and failing, wrote and mailed the letter in which he stated the fact of removal, the amount of insurance desired, and the time of payment of the premium.   This letter supplied the necessary elements to make a complete and binding contract, but it was not received by the agent until after the fire. From these facts it is clear that the conversation of June 10th did not constitute an enforceable contract for the insurance of the goods while in the cottage at Ottawa Beach, and that to reform the policy in the manner requested by the plaintiff it would be necessary to find that the agent agreed to write into it several elements upon which the minds of the parties never met.

It is also urged by counsel for the plaintiff that if the conversation of June 10th does not constitute a contract, it at least amounts to an offer of the defendant to insure the goods on notice of their removal, and that the letter of June 30th was an acceptance of the offer and became binding when deposited in the post

office.   We are unable to agree with counsel in this
contention.   If the conversation of June 10th could
be said to contain an offer, it was not definite; it
lacked some of the material elements of an insurance
contract, and if accepted as made, would not have been
enforceable.

However, the letter of June 30th was not an accept-
ance but a notice including certain essential matters
upon which the minds of the parties had not met, and
which would not become binding until received by the
party who made the offer.   For this reason and for
the further reason that the offer was not made by
mail, the numerous cases cited and relied on by coun-
sel as sustaining their contention are not applicable.
A discussion of the principles of law relative to cor-
respondence contracts will be found in 13 C. J. p.
300.

It is further insisted by counsel that the issuance
of the policy with knowledge on the part of the agent
that the goods were to be removed was a waiver of
the location condition in the policy, and estopped the
company from insisting on that condition.   As sus-
taining this contention, the following cases are cited:
*Pollock* v. *Insurance Co.*, 127 Mich. 460, and *Copeland*
v. *Insurance Co.*, 77 Mich. 554 (18 Am. St. Rep. 414).
These cases may be readily distinguished from the
case under consideration if the fact be kept in mind
that here the goods had not been removed to Ottawa
Beach at the time the policy was issued, that removing
them increased the risk, that after the conversation
of June 10th the agent was required to take no further
action until he received notice from the insured of the
time and amount of insurance desired.

In *Copeland* v. *Insurance Co., supra,* there was an
incumbrance on the property at the time the policy
was issued, and the insured desired to place an ad-
ditional incumbrance of from $100 to $200 on it.   Of

this the agent had notice, and promised to note the fact on the application, so that it would become a part of the contract of insurance.    It was held that the fact that it was not so indorsed would not defeat a recovery on the policy.

In *Pollock* v. *Insurance Co., supra,* it was held that the liability of the company did not cease because the goods were removed to a new location after the agent had been requested for a transfer, had consented to it and promised to indorse it upon the policy, but neglected to do so.    In these cases the agents' knowledge upon which they were bound to act was of existing facts.    In the case at bar, the conversation of June 10th was at most a promise to make the transfer in the future when notified by the insured. No definite notice was given until after the goods were removed, and, as it was not received until after they were destroyed, the agent had no opportunity to make the necessary indorsement.

In *Gordon* v. *Insurance Co.,* 197 Mich. 226· (L. R. A. 1918E, 402), Justice FELLOWS cites and discusses many cases from this and other jurisdictions relative to questions similar to those here involved.    An examination of that case will show why the doctrine of waiver and of equitable estoppel cannot be applied. See, also, *Hartford Fire Ins. Co.* v. *Davenport,* 37 Mich. 609.

The decree will be affirmed, with costs.

FELLOWS, C. J., and WIEST, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.